STATE OF LOUISIANA *v.* LOUIS BORDELON et al.

The act of March 21st, 1850, making an appropriation for the Louisiana Legion, is not in contravention with the 93d article of the Constitution of the State, and the money should be paid by the treasurer, without any further appropriation by the Legislature.

A *mandamus* is the proper remedy for enforcing the performance of acts on the part of a public officer strictly ministerial, and in which there is no discretion vested in them.

APPEAL from the First District Court of New Orleans, *Larue,* J. This case arose from an application for a *mandamus* against the auditor of public accounts and the State treasurer, upon the relation of the major-general of the Louisiana militia.

The judgment of the district court was as follows :

"The relator alleges, that he is by law entitled to receive from the State treasurer, the sum of two thousand five hundred dollars, but that *Louis Bordelon,* Auditor of Public Accounts, refuses to deliver to him the warrant upon the State treasurer for the said sum, without which warrant it cannot be legally paid. A motion to show cause why a *mandamus* should not issue to the auditor and treasurer, was granted. And the cause shown by both is the same, to wit : ' that there is no law specially appropriating the amount of money for which a warrant has been demanded in this case, and that without a specific appropriation no money can be drawn from the treasury, under the 93d article of the Constitution.'

" The only question, then, in this case is, whether any appropriation has been made by law of the sum for which the warrant is claimed, in conformity with the Constitution of the State.

" The article of the Constitution declares that 'no money shall be drawn from the treasury but in pursuance of specific appropriation of money be made for a longer term than two years.' The same rule, with the exception of the word specific, was contained in the former Constitution. (art. 6, sec. 5.) Why this word was inserted does not appear from the proceedings of the convention, for the article was reported and adopted without debate; (Debates in Convention, 823 ;) but as it was evidently designed to change what *formerly existed,* full force and effect must be given to it.

" The law under which the applicant in this case claims the warrant from the auditor, is entitled ' an act making appropriations for the support and maintenance of the Louisiana Legion, and the volunteer uniformed companies now organized, and which may be hereafter organized in the city of New Orleans,' and was approved March 21st, 1850 ; and it enacts, ' that the treasurer of the State pay upon the warrant of the auditor of public accounts, out of any moneys in the treasury not otherwise appropriated, to the major-general of the first division of the Louisiana militia, and, in his absence, to the brigadier-general of the Louisiana legion, and, in the absence of both the above named, to the brigadier-general of the first brigade Louisiana militia, the yearly sum of two thousand five hundred dollars, for the support and maintenance of the Louisiana legion, and of the other volunteer companies uniformed, now organized in the city of New Orleans, or which may be hereafter organized, and be attached to any present military organization, and not otherwise provided for by law.' The act further proceeds to direct the mode in which this money shall be distributed.

"It is contended, that this is not a specific appropriation, nor, indeed, any appropriation at all. The first thing that impresses itself upon the mind is, that the General Assembly intended the act to be an appropriation act. This is evident from its title. Has the Legislature, in the body of the law, failed to accomplish its intention? What is the meaning of the word *appropriate?* It is to allot, assign, set apart, apply, anything to the use of a particular person or thing, or for a particular purpose. This may be done without using the word *appropriate* itself. And this act certainly does assign, allot, and set apart a certain portion of the public moneys not otherwise appropriated, and directs the said portion to be paid to particular persons, for a given purpose. There are no formal words required to be used in an appropriation bill. The Constitution has not undertaken to direct what technical language shall be employed; this has been wisely and safely left to the legislative power, and they seem to have used their right in this instance in such a manner as to leave no doubt to what they meant to do, or of what they did. The language of this act must, therefore, be regarded as fully sufficient to constitute an appropriation.

"Is the appropriation specific in the intent of the Constitution? It is specific in the amount to be paid—two thousand five hundred dollars a year. It is specific in the person to whom it is to be paid—one or the other of the named officers, as the case may be. It is specific as to the time when the money is to be paid in each year, during two years. It is specific as to the purpose for which it shall be used—the maintenance of the legion and certain other volunteer companies. It is specific as to the money out of which the same shall be paid—any moneys in the treasury not otherwise appropriated. In what other respect an appropriation could be constitutionally required to be specific, has not been suggested by counsel, nor does it occur to the court. In the only sense, then, in which the words of the Constitution can have any meaning, so as to distinguish a specific appropriation from any other appropriation, the present act seems to be as specific as it can be possibly made.

"It is therefore ordered, adjudged and decreed, that the rule be made absolute, and that a peremptory *mandamus* issue, as prayed for."

*D. Augustin*, for the relator. *Isaac Johnson*, Attorney General, for the defendants. The judgment of the court was pronounced by

EUSTIS, C. J. The relator alleges that he is by law entitled to receive from the State treasurer the sum of two thousand five hundred dollars; but that *Louis Bordelon*, Auditor of Public Accounts, refuses to deliver to him the warrant upon the State treasurer for the said sum, without which warrant it cannot be legally paid. A rule to show cause why a *mandamus* should not issue to the auditor and treasurer was granted, and the cause shown by both is the same, to wit: "that there is no law specially appropriating the amount of money for which a warrant has been demanded in this case, and that without a specific appropriation no money can be drawn from the treasury, under the 93d article of the Constitution.

The only question, then, in this case is, whether any specific appropriation has been made by law of the sum for which the warrant is claimed, in conformity with the Constitution of the State.

The judge of the First District Court of New Orleans, in which these proceedings were instituted, after a careful examination of the question submitted, made the rule absolute, and directed a peremptory *mandamus* to be issued as prayed for.

STATE        The attorney general, representing the auditor and treasurer, appealed
  v.
BORDELON.  from this decision.

We concur with the district judge in the view he has taken of the statute under which the relator claims. We consider the *mandamus* as enforcing the performance of an act on the part of public officers strictly ministerial, in which there is no discretion on their part ministerial or otherwise, and that it is the proper remedy for a case of this kind. *The United States on the relation of Stokes* v. *Amos Kendall*, Postmaster General. 12 Peters, 524.

We do not find the statute under consideration to be in conflict with the sections of the act of 1847, to establish and regulate the treasury department, cited in argument by the attorney general.

The judgment of the district court is therefore affirmed.