STATE OF MONTANA EX REL. LOUIS ROTWITT, RELATOR, *v.* RICHARD O. HICKMAN, RESPONDENT.

CONSTITUTIONAL LAW — *Compensation of State officers* — *Appropriations by constitutional provision.* — Section 4, article vii. of the Constitution, provides that until otherwise provided by law, certain State officers enumerated, "shall quarterly, as due, during their continuance in office, receive for their services compensation, which is fixed as follows: . . . . Secretary of State, three thousand dollars per annum. . . . . The compensation enumerated shall be in full for all services by said officers respectively rendered in any official capacity or employment whatever during their respective terms of office, and the salary of no official shall be increased during his term of office. No officer named in this section shall receive, for the performance of any official duty, any fee for his own use.

. . . ." Section 31, article v., provides that: "Except as otherwise provided in this constitution, no law shall extend the term of any public officer, or increase or diminish his salary or emolument after his election. . . . ." Section 34, article v., provides that: "No money shall be paid out of the treasury except upon appropriations made by law, and on warrant drawn by the proper officer in pursuance thereof, except interest on the public debt." Section 1, article vii., provides that the State auditor and State treasurer "shall perform such duties as are prescribed in this constitution, and by the laws of the State." The State treasurer refused to pay a warrant drawn on him by the State auditor in favor of the relator for his quarterly salary as secretary of State, upon the ground that no appropriation had been made by law for the payment of any warrant issued to State officers for their services. *Held*, that the State treasurer was required to pay such warrant, as the provision of the constitution that certain enumerated officers shall receive the compensations specified therein is an appropriation made by law, and no legislative act is necessary.

Original proceeding. Application for writ of *mandamus*.

*McCutcheon & McIntyre*, for Relator.

Relator seeks a mandate requiring the State treasurer to pay a warrant drawn in favor of relator for services as secretary of State. It is admitted that there is sufficient money in the treasury to pay this warrant, but respondent, as an excuse for his refusal to pay, claims there is no appropriation by the legislature with which to pay. Article vii., section 4 of the Constitution, fixes relator's salary, and provides that he shall receive the same as due, etc. Article v., section 34, provides: "No money shall be paid out of the treasury except upon appropriations made by law, and on warrant drawn by the proper officer in pursuance thereof. . . . ." Has no such appropriation been made? The word "appropriation" is defined by Webster as, "The act of setting apart or assigning to a particular use or person; . . . . the application to a special use or purpose . . . . as of money to carry out some public object." Under this definition an appropriation has been made by article vii., section 4 of the Constitution. It applies or directs the payment to the officers therein named of certain sums of money to pay their respective salaries for the duties of their offices. Another meaning of the word "appropriation," as used in section 34, article v. of the Constitution, is that no money shall be drawn from the State treasury, except in pursuance of law. (*McCauley* v. *Brooks*, 16 Cal. 29.) Section 4, article vii. of the Constitution, provides that the officers therein named shall, at certain times,

receive certain sums of money. To pay these salaries the money would be drawn in pursuance of law. Section 4, article vii., is itself an appropriation, and of course is one "made by law." The appropriation, therefore, having been made by the constitution, it is not essential that the legislature should act to give it validity. *Thomas* v. *Owens*, 4 Md. 199, is on all fours with the case at bar, and we submit is decisive of the questions raised by respondent. (See, also, *State* v. *Weston*, 4 Neb. 216; *State* v. *Bordelon*, 6 La. An. 68.) The constitutional provisions relating to salaries is self-executing. (Endlich Int. Stat. § 540; Cooley's Constitutional Limitations, p. 100; *Reynolds* v. *Taylor*, 43 Ala. 420.) Upon the presentation of relator's warrant to the treasurer, it became his duty to pay it out of funds in his possession "not otherwise appropriated." (Comp. Stats. § 1123, fifth div.) "When a plain official duty, requiring no exercise of discretion, is to be performed, and performance is refused, any person who will sustain personal injury by such refusal may have a *mandamus* therefor." (*Fisk* v. *Cuthbert*, 2 Mont. 604.)

*Henri J. Haskell*, Attorney-General, for Respondent.

No brief on file.

BLAKE, C. J. — This is an application to the court for a writ of mandate to be issued to Richard O. Hickman, as the State treasurer of the State of Montana, commanding him to pay forthwith, out of such moneys as may be in the treasury of the State, and not otherwise appropriated, a certain warrant hereinafter described. It appears from the affidavit on the application of Louis Rotwitt, the party beneficially interested, and is admitted by the respondent, that Rotwitt is the duly elected, qualified, and acting secretary of the State of Montana. That he entered upon the discharge of his duties upon the eleventh day of November, 1889, and has ever since that date continued to perform the same. That upon the tenth day of February, 1890, he presented his account in the sum of $416.67 against the State for his compensation or salary as such secretary of the State for the quarter ending on the thirty-first day of December, 1889, to Edwin A. Kenney, who was then and is now the duly elected, qualified, and acting auditor of the State of Montana, for settle-

ment, audit, and allowance. That thereupon the said Kenney, as such State auditor, settled, audited, and allowed said account for the said sum, and then drew his warrant therefor on the said State treasurer, as follows:—

"No. 9,264.    STATE OF MONTANA, COUNTY OF LEWIS
                AND CLARKE, HELENA, M. T., Feb. 10, 1890.
"Territorial warrant. Original.

"The treasurer will pay to L. Rotwitt or order four hundred and sixteen and 67-100 dollars, for salary as secretary of State for quarter ending Dec. 31, 1889, out of any moneys in the treasury not otherwise appropriated.

"$416.67-100.        E. A. KENNEY, State Auditor."

(Indorsement:)                    "Feby. 10, 1890.
    "Presented, but not paid for want of an appropriation.
                    "R. O. HICKMAN, State Treasurer."

That he presented the said warrant to the said Hickman, as such State treasurer, and demanded payment thereof, and that payment thereof was refused, and the same is wholly unpaid; and that there is now in the treasury of the State, and in possession of the said Hickman, as such State treasurer, the sum of $40,000.

The alternative writ was issued, and on the return thereof said Hickman made the following answer, to wit: "That no provision has been made by law for the payment of this or any other warrant issued to the State officers of Montana for their services rendered as such officers." The relator then demurred to this answer upon the ground that it does not state facts sufficient to constitute a defense.

There is no statute which makes an appropriation or otherwise provides for the payment of this warrant, and the sole question for decision depends upon the interpretation of the following clauses of the Constitution:—

"Until otherwise provided by law, the governor, secretary of State, State auditor, treasurer, attorney-general, and superintendent of public instruction, shall quarterly, as due, during their continuance in office, receive for their services compensation, which is fixed as follows: . . . . Secretary of State, $3,000 per annum. . . . . The compensation enumerated shall be in full for all services by said officers respectively rendered in any

official capacity or employment whatever during their respective terms of office, and the salary of no official shall be increased during his term of office.    No officer named in this section shall receive for the performance of any official duty any fee for his own use. . . . ."    (Art. vii. § 4.)

"Except as otherwise provided in this constitution, no law shall extend the term of any public officer, or increase or diminish his salary or emolument after his election. . . . ." (Art. v. § 31.)

"No money shall be paid out of the treasury except upon appropriations made by law, and on warrant drawn by the proper officer in pursuance thereof, except interest on the public debt."    (Art. v. § 34.)

"The State auditor and State treasurer shall perform such duties as are prescribed in this constitution and by the laws of the State."    (Art. vii. § 1.)

This court, in the cases of *State* v. *Ah Jim, ante,* p. 167, and *Thompson* v. *Kenney, ante,* p. 223, inquired into the effect of the provisions of the constitution upon the statutes of the Territory and State, and a repetition of the citations and conclusions therein will be avoided.    We content ourselves with the observation that the foregoing language of the constitution and the laws concerning the territorial treasurer are applicable to this proceeding.    What, then, are "appropriations made by law?"    A majority of the States of the American Union have not adopted constitutions which specify the salaries that should be paid to their officers. Numerous cases can be found in their courts which determine the necessity of an appropriation by the law-making department before the payment of money can be authorized by the custodian of the public funds.    But the fundamental law of this State constitutes an exception in this important feature, and the decisions of such courts do not enlighten us.    All the adjudications which construe constitutional phrases similar to those of Montana concur in their declaration of principles.

The leading case is that of *Thomas* v. *Owens,* 4 Md. 189, which was decided in 1853 by the court of appeals, and the opinion was delivered by the profound jurist, Chief Justice Le Grand, after a thorough examination.    Thomas was the comptroller of the State, and applied for a writ of *mandamus* to be

directed to Owens, the State treasurer, commanding him to pay the amount of a draft drawn in payment of his salary. Owens refused payment on several grounds, including the following: "That no sufficient appropriation has been made by law specifying a sum applicable to the payment of the amount claimed by the petitioner." The gravity of the investigation, and the lucid reasoning of the court, induce us to be liberal in the use of excerpts. "The inquiry, then, is, is there an appropriation for the period intervening between the 10th of December, 1851, the time from which we think he is entitled to pay, and the first day of January, 1852?

"We are of opinion the constitution, *proprio vigore*, makes such appropriation. Under our system of government, its powers are wisely distributed to different departments. Each and all are subordinate to the constitution, which creates and defines their limits. Whatever it commands is the supreme and uncontrollable law of the land. This is not denied *directly*, although it is inferentially, substantially, and *practically*. It is said that, inasmuch as the twentieth section of the third article of the Constitution declares, 'No money shall be drawn from the treasury of the State except in accordance with an appropriation made *by law*,' that an *act of assembly* must precede the withdrawal; and inasmuch as none such has been passed covering the period antecedent to the first of January, 1852, there is therefore no appropriation *by law* for that time. To this reasoning we cannot yield our consent.

"In the construction of any instrument, the whole paper ought to be considered, that the will of its framers may be truly and accurately ascertained. The objects contemplated, and the purposes to be subserved, should be constantly kept in view, and the language used interpreted in reference to the manifest intent. Now, what could have been the purpose of the clause in the constitution to which we have referred? It was obviously inserted to prevent the expenditure of the people's treasure *without their consent*, either as expressed by themselves in the organic law, or by their representatives in constitutional acts of legislation."

After citing Story on Constitution (3d ed.), § 1348, and 1 Tuck. Blackst. Com. 362, the opinion continues: "These being

the purposes and objects of the clause, the question is: *Have the people given their consent to the payment of the salary of the comptroller?* That they have done so is palpably manifest. They have said he 'shall receive an annual salary of $2,500.' They have not merely said he may *claim* such a sum, but, emphatically, that he 'shall *receive*' it. It is impossible for human language to be less ambiguous or more positive. The people, in their *organic* law, which is paramount to all other law, have not only given their *consent,* but they have imperatively issued their commands that the particular officer '*shall receive*' it. How is their will obeyed if it be within the power of the treasurer, or any one else, to withhold it from caprice, unfaithfulness to duty, or from mistaken judgment? To allow of such a power in that officer would be to put him above the constitution, whose creature he is. It would be to invest him with authority to annul the sovereign will; in fact, to stop the wheels of government, and reduce things into the wildest confusion. The constitution has said the officer '*shall receive*' his salary; and this *fiat* of the supreme will is not to be nullified by the mere *ipse dixit* of a mere *ministerial* officer; for such, and none other, is the treasurer. In assigning the powers of government to three different departments, the constitution intended to secure to each its independency of action; and the more certainly and effectually to insure this, it has ascertained and appropriated the salary they are severally to *receive,* and it has inhibited the legislature from *diminishing* it. Were it not for such a provision, the whole government would exist only by permission of the legislature. It can only be carried on through the instrumentality of individuals, and their services can only be obtained by being paid for. The framers of the constitution, and the people who adopted it, aware of this, determined not to submit the durability of their work to the caprice, passion, or prejudice which possibly might, at times of great excitement, triumphantly rule the action of the legislature; and, therefore, wisely did the work themselves by ingrafting in the organic law a provision for the protection of those who should be charged with its execution. In other words, *they* made the appropriation.

" An opposite interpretation would countenance this paradox: that a co-ordinate branch of the government could stop its whole

machinery by refusing to pay the salaries of those upon whom is devolved the discharge of the duties of the other branches; and this, too, when the constitution *expressly* declares that these officers '*shall receive*' their salaries, and that they '*shall not be diminished!*' 'It would be giving to the legislature a practical and real omnipotence with the same breath which professes to restrict their powers within narrow limits. It is prescribing limits, and declaring that those limits may be passed at pleasure.' (*Marbury* v. *Madison,* 1 Cranch, 178.)

"Now, it is presumed it would not be contended by any one, however hazardous, that if the legislature were to pass an act *diminishing* the salary of the governor, or of any other officer whose salary is fixed by the constitution, that such an exercise of power would be rightful and constitutional. If it be not competent to the legislature to take away a *part*, by what process of reasoning can it be maintained that they can take away the *whole?* And yet this is the extent to which the argument addressed to us goes. It seems to us to be but necessary to state the proposition to cause its instantaneous rejection. We hold, for the reasons we have assigned, the people have given their *consent* to the payment of the salaries fixed in the constitution, by declaring the amount '*shall*' be '*received*' by the particular officer; and that this is an appropriation by *law*—by the *supreme law* of the State."

The case of *Thomas* v. *Owens, supra,* is commented on in *Green* v. *Purnell,* 12 Md. 333, and the court said : "There, the petition asked for a *mandamus* requiring the treasurer of the State to pay the comptroller, upon his warrant, the amount of his salary, which is regulated by the constitution, and, of course, duly appropriated by law."

In *State ex rel. Roberts* v. *Weston,* 4 Neb. 216, the "case raises the question of the authority of the State auditor to draw warrants upon the State treasurer for the payment of the salaries of the State officers when no appropriation therefor has been made by the legislature." The constitution of that State provides that "no money shall be drawn from the treasury except in pursuance of a specific appropriation made by law." "If this clause," says Chief Justice Lake, " had limited the appropriation which it requires to an act of the legislature, there might

be some force in the objection urged. But it only requires a specific appropriation '*made by law;*' and we are clearly of the opinion that this may be accomplished just as effectually by the constitution as by legislative enactment." The court further says: "In the case of *Reynolds, Auditor,* v. *Taylor,* 43 Ala. 420, it was held that if the salary of a public officer is fixed, and the times of payment prescribed by law, no special annual appropriation is necessary to authorize the auditor to draw his warrant for its payment. But the case of *Thomas, Comptroller,* v. *Owens,* 4 Md. 189, seems to be more directly in point. It was there held that when the constitution declared the amount to be paid an officer, that it was an appropriation made *by law,* and no legislative act was necessary." In *State ex rel. Brown* v. *Weston,* 6 Neb. 16, the court explains the decision in *State ex rel. Roberts* v. *Weston, supra,* and asserts that "it reaches only those officers who hold by virtue of the constitution itself, and not to those who hold their offices at the will of the legislature;" and the "appropriation *made by law* . . . . may be done either by direction of the constitution itself—that being the supreme law in the State—or by the legislature. . . . ." We do not know of any rule to the contrary where the same constitutional provisions exist which are embodied in the supreme law of this State. An illustration of the principles which are applied where salaries of the officers are not prescribed by the constitution, and the case of *Thomas* v. *Owens, supra,* is not followed, may be found in *Myers* v. *English,* 9 Cal. 348. This was an application for a writ of *mandamus* to compel the State treasurer to pay certain warrants drawn by the comptroller on account of the salary of a district judge. The constitution provided that the judges of the District Court shall severally, at stated times during their continuation in office, receive for their services a compensation, to be paid out of the treasury, which shall not be increased or diminished during the term for which they shall have been elected. (Art. vi. § 15.) Another clause is the following: "No money shall be drawn from the treasury but in consequence of appropriations made by law." (Art. iv. § 23.) It was correctly held by the court that it was necessary for the legislature to define the amount of the salary, and make an appropriation for the payment thereof, before this remedy could be enforced.

This view of the constitution of a State had been adopted by the Supreme Court of the United States, in construing the clause of the federal constitution which declares that no State shall pass any "law impairing the obligation of contracts." Mr. Justice Swayne, in *Mississippi etc. R. R. Co.* v. *McClure,* 10 Wall. 515, asserts that "the constitution of a State is undoubtedly a law, within the meaning of this prohibition." In *White* v. *Hart,* 13 Wall. 652, the court holds "that a State can no more impair the obligation of a contract by adopting a constitution than by passing a law. In the eye of the constitutional inhibition, they are substantially the same thing." (*Gunn* v. *Barry,* 15 Wall. 623; *Town of Concord* v. *Savings Bank,* 92 U. S. 630; *New Orleans Gas Co.* v. *Louisiana Light Co.* 115 U. S. 672.)

We cannot add anything to the discussion of this vital proposition. The doctrines which were announced in *Thomas* v. *Owens, supra,* have been accepted for years without a question, and have remained inflexible under every test. The framers of the constitution of this State numbered upon their roll most eminent jurists and lawyers. They studied with wisdom and ability the charters which the people had granted to the States of the Union, in their efforts to obtain the best articles from all. They knew the precedents which have been enumerated, and the canons of interpretation which had been formulated by the courts, and deliberately created the sections of the constitution which fix the salaries of many State officers. In their action upon this subject they did not incorporate the provisions which are frequently in force in the instruments of this solemn character, and did not permit the legislature to have this great power. In order that there should be no erroneous construction of the clauses under examination, the following section was adopted: "The provisions of this constitution are mandatory and prohibitory, unless by express words they are declared to be otherwise." (Art. iii. § 29.) When, therefore, it is plainly declared that the secretary of State, or any other officer, shall receive a certain sum as compensation for his services, an appropriation is "made by law," and the proper officer is empowered to draw his warrant on the State treasurer in pursuance thereof; and the respondent is required to pay the above-described war-

rant to the relator.    The demurrer is sustained, and the respondent abiding by his answer and return, it is therefore ordered that a peremptory writ of mandate be issued forthwith according to the prayer of the application herein.

HARWOOD, J., and DE WITT, J., concur.