CHARLES WESTON, AUDITOR, v. LEE HERDMAN.

FILED FEBRUARY 19, 1902. No. 12,426.

Commissioner's opinion, Department No. 2.

1. Specific Appropriation: CONSTITUTION: LEGISLATURE. A specific appropriation "made by law," within the meaning of section 22, article 3, of the constitution of the state of Nebraska, is an appropriation made either by direction of the constitution itself, or one made by the legislature under the forms and in the manner prescribed in the constitution for drawing money from the public treasury.

2. Reporter of Supreme Court: SALARY: CONSTITUTION: SPECIAL LEGISLATIVE ENACTMENT. The appropriation for the salary of the reporter and ex-officio clerk and librarian of the supreme court is made by section 25, article 16, of the constitution, and requires no special legislative enactment.

ERROR from the district court for Lancaster county. Tried below before HOLMES, J. Affirmed.

Frank N. Prout, Attorney General, and Norris Brown, Deputy, for plaintiff in error.

Frank Irvine and Robert Ryan, contra.

OLDHAM, C.

On the 22d day of July, 1901, the defendant in error presented his voucher in proper form and duly verified to the auditor of public accounts, and demanded that a warrant should issue thereunder for his salary as reporter and *ex-officio* clerk and librarian of the supreme court of the state of Nebraska for the quarter ending July 1, 1901. On presentation of this claim the auditor rejected the same "for the reason that no appropriation has been made by the legislature for the payment of this claim." The defendant in error thereupon appealed the claim from the decision of the auditor to the district court of Lancaster county, Nebraska. When his appeal had been docketed in the district court he filed his petition setting up his appointment and qualification as reporter and *ex-officio* clerk and librarian of the supreme court of the state of Nebraska, and that he had performed services as such reporter, clerk and librarian for the quarter ending July 1, 1901. He also alleged the filing of his claim with the auditor and the action of the auditor thereon, as hereinbefore set out, and prayed that the decision of the auditor be reversed and an order and mandate be issued requiring the auditor to issue a warrant upon the treasury for the amount of his salary for the quarter ending July 1, 1901. To this petition the auditor filed a general demurrer. This demurrer was overruled by the trial court, and, the auditor refusing to further plead, judgment was rendered on the petition as prayed for. From this judgment the auditor has prosecuted error to this court.

There are no disputed facts in this case. The only question involved is as to the authority of the auditor to adjust a claim, and draw a warrant for the salary of the reporter, clerk and librarian of this court, without a specific appropriation having been made for such purpose by the legislature of the state of Nebraska. Section 22 of article 3 of the constitution prohibits the drawing of money from the treasury "except in pursuance of a specific

appropriation made by law." Under our state government
an appropriation "made by law" must emanate from an
act of the legislature, or from the primary source of power,
—the constitution itself.

In the early case of *State v. Weston,* 4 Nebr., 216, it was
held that where the constitution fixed the salary of a state
officer and provided for its payment quarterly from any
funds not otherwise appropriated, that such constitutional
enactments operated as an appropriation of the amount
necessary to pay such salary, and no legislative enactment
was required. In the later case of *State v. Weston,* 6
Nebr., 16, the court properly restricted the rule announced
in *State v. Weston, supra,* to those officers whose salaries
are fixed by the constitution, as distinguished from those
whose compensation is left to the discretion of the legis-
lature. In discussing the restrictions enforced by section
22, article 3 of the constitution, the court in this case
says: "It will be observed that this provision does not re-
quire the appropriation to be made by act of the legis-
lature, but merely that it be 'made by law,' so that it may
be done either by direction of the constitution itself, that
being the supreme law of the state, or by the legislature
through the forms prescribed for drawing money from the
public treasury." It is clear from the admitted facts in
this case that, if the reporter and clerk of this court is
entitled to a warrant on the claim which he filed with the
auditor in the case at bar, his right must be founded on a
plain direction of the constitution, as it is entirely unsup-
ported by a specific legislative appropriation. Turning
now to article 6 of the constitution, we find that it pre-
scribes a specific salary of $2,500 per annum for each of
the judges of the supreme and district courts. We find,
also, that it defines the jurisdiction and constitutes the
offices of county judge, justices of the peace and police
magistrates, without any specific direction as to compensa-
tion in the various sections constituting these offices. The
only provision for compensation of these latter officers is
contained in the concluding portion of section 20, article

6, which says: "All officers, when not otherwise provided for in this article, shall perform such duties and receive such compensation as may be provided by law." Section 8 of article 6 provides as follows: "There shall be appointed by the supreme court a reporter, who shall also act as clerk of the supreme court, and librarian of the law and miscellaneous library of the state, whose term of office shall be four years, unless sooner removed by the court, whose salary shall be fixed by law, not to exceed fifteen hundred dollars per annum." Now, the question is, does this section make a specific direction for the payment of a salary to the reporter and clerk of this court, or is he left in that class of judicial officers whose compensation is only such "as may be provided by law"? We think that a fair construction of section 8 would interpret it to mean that the reporter and clerk of this court should receive a salary fixed by law at not to exceed $1,500 per annum. The mandate in this section is imperative that the reporter and clerk shall receive a salary, and, second, that such salary shall not exceed $1,500 per annum. Having thus been provided with a salary, as distinguished from any other kind of compensation, the reporter and clerk of this court is clearly taken out of that class of judicial officers whose compensation is left solely to the discretion of the legislature. Turning then to section 25 of article 16 of the constitution, we find the following provision: "The auditor shall draw the warrants of the state quarterly for the payment of the salaries of all officers under this constitution, whose compensation is not otherwise provided for, which shall be paid out of any funds not otherwise appropriated." Here, then, is an appropriation, by the highest source of civil power, from any unappropriated funds of the state, for the purpose of paying the salaries of all constitutional officers "whose compensation is not otherwise provided for." In obedience to the command of section 8 of article 6, the legislature has enacted section 17, chapter 19, of the Compiled Statutes of Nebraska, which provides: "The reporter of the supreme court, who under the

provisions of section 8, article 6 of the constitution, acts as clerk thereof * * * shall receive an annual salary of $1,500, payable as the salary of other state officers is paid." Here, then, is an enactment that fixes a specific compensation as salary for the reporter and clerk of this court, within the constitutional limits. While we fully agree with the vigorous contention of the deputy attorney general that this section of the statute is not self-executing, and that, standing alone, it would not carry with it a continuing appropriation for the salary of this office, yet the view we take of the matter is that this statute simply fixes the amount of the salary to be allowed to the reporter and clerk of this court, in obedience to the mandate of the constitution, and that the appropriation for such salary is made by section 25 of article 16 of the constitution.

The only contention urged against the payment of this claim by the deputy attorney general is the fact that the constitution did not fix in specific terms the exact salary which the clerk and reporter of this court should receive. He admits frankly, that if this had been done, the auditor would have no standing in this case, in view of the holding of this court in *State v. Weston,* 4 Nebr., 216. A contention similar to this was urged in the case of *Reid v. Smoulter,* 128 Pa. St., 324, 5 L. R. A., 517. In this case the constitution of the state of Pennsylvania provided for separate orphans' courts in counties of a certain population in that state. It also provided for the offices of clerk and assistant clerk of such courts, and made it the duty of the general assembly to pass such laws as might be necessary to carry the same into full force and effect. At the next session of the general assembly an act was passed providing for a salary of $1,500 per year for the assistant clerk of the orphans' court. A subsequent legislature repealed this statute providing for this salary. The question arose on the right of the deputy clerk to draw his salary, notwithstanding the act of the legislature in repealing the statute. In determining the question in the clerk's favor, the court

said : "If the legislature may repeal the act adjusting the salary, without making any further or other provision in that behalf, it may practically abolish the office. If the assistant clerk may be thus deprived of the office, the clerk of the court and the judge are both liable to the same fate, and in this way, that might be done by indirection which could not be done directly. It is true that the salary is a matter which, by the constitution, is submitted to the discretion of the legislature. In the exercise of that discretion, by the act of 1874 the salary was fixed at $1,500, and this rule of compensation will continue until by some other statute it is changed. The salary first fixed may perhaps be increased or diminished, subject to the restriction of the 13th section of the 3rd article of the constitution, as the legislature should from time to time see fit to provide, but to repeal the provision for a salary altogether, is to remove the clerk from his office." The reasoning of this case is supported in principle by the holdings in *State v. Hickman*, 9 Mont., 370; *Thomas v. Owens*, 4 Md., 189; *Reynolds v. Taylor*, 43 Ala., 420. Applying the doctrine of this case to the case at bar, we are constrained to hold that while the legislature might reduce the salary of the reporter and clerk of this court from the amount fixed by section 17, chapter 19, Compiled Statutes, yet it can not entirely abolish the salary of such officer, by failing to make an appropriation for such purpose, for, if it could, then by indirection it would virtually nullify the provision of the constitution creating such office, for, as said by the great dramatist,

> "You take my house, when you do take the prop
> That doth sustain my house; you take my life,
> When you do take the means whereby I live."

It is therefore recommended that the judgment of the district court be affirmed.

BARNES, C., concurring.

I fully concur in the opinion of my Brother Oldham in this case. This court has held in *State v. Weston*, 4 Nebr., 216, and in *State v. Weston*, 6 Nebr., 16, that no

specific legislative appropriation is necessary to authorize the auditor to draw his warrant for the payment of the salaries of those officers created by, and whose salaries are fixed in, the constitution. The supreme court reporter, ex-officio clerk and librarian, being one of the officers provided for by the constitution, it remains only to inquire whether or not his salary is fixed therein. We think that it is so fixed. That portion of the constitution which creates the office also provides for the appointment of such officer, and that he shall receive a salary to be fixed by law, not to exceed $1,500 per annum. We believe that this fixes the salary until the legislature, by proper legal enactment, shall change the amount. It may be that the legislature could reduce that amount at a proper time, and by suitable enactment in that behalf; but, until some such action is taken, I hold that the amount of the compensation is fixed at $1,500 per annum. Such must have been the understanding of the constitution makers. Suppose that after the adoption of the constitution, the organization of the court, and the appointment of the reporter, the legislature had failed to take any action in relation to the salary of such reporter at all, what would have been the result? The clerk could not have been expected or required to serve without any compensation, and, without his services the court itself could do no business. Thus the powers of one of the governmental departments provided for by the constitution itself would have been completely paralyzed. Such a condition of affairs could not have been contemplated. The salary of the clerk is fixed by the constitution, and the intention was simply to allow the legislature to reduce the amount thereof, if it should be found too great to be a reasonable compensation for the performance of the duties of the office. In case it were necessary for the affirmance of the judgment of the court below, I would so hold.

POUND, C., concurring.

I concur in the opinion of my Brother Oldham. In ad-

dition one further remark might be made.  It was argued that an appropriation must be certain in amount, and we were cited to the definition in *State v. Wallichs,* 12 Nebr., 407.  But it seems to me we may well apply the maxim that that is certain which may be rendered certain.  The constitution requires a specific appropriation made by law.  In section 8, article 6, of the constitution, and section 17, chapter 19, Compiled Statutes, enacted pursuant thereto, we have such appropriation, within the purview of that phrase.  The constitutional provision contemplates and expressly refers to such a general law fixing the exact sum.  I can see no reason for not construing them together, and a reference to the statute, which the constitution plainly invites us to make, removes all uncertainty.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.