MENEFEE, *State Treasurer*, v. ASKEW, *State Game and Fish Warden.*

No. 1230.    Opinion Filed February 1, 1910.

(107. Pac. 159.)

1.    **STATE FINANCE — "Appropriation."** An "appropriation" in this state is an authoity of the Legislature, given at the proper time and in legal form to the proper officers, to apply a distinctly specified sum, from a designated fund out of the treasury in a given year, for a specified object or demand against the state.

2.    **STATE FINANCE — Appropriation—Form.** No arbitrary form of expression or particular words are required by the Constitution in making an appropriation, which may be made by implication when the language employed reasonably leads to the belief that such was the intention of the Legislature.

3.    **STATE FINANCE—Appropriation—Compensation of Game and Fish Warden.** Sections 9, 10, art. 4. c. 19, p. 303, Sess. Laws 1909, in connection with sections 3, 13, art. 6, c. 19, constitute a valid appropriation as to the salary of the Game and Fish Warden in the sum of $1,800 per annum, and his actual necessary traveling expenses, not to exceed $800 per annum, and the salaries of not exceeding eight deputy game and fish wardens each in the sum of $800 per year and their each actual, necessary expenses, not to exceed $600 per annum, while actually employed under the direction of the State Game and Fish Warden, as controlled by sections 55 and 56, art. 5, of the Constitution, but continue in effect as an appropriation for two years and one-half only after the passage of said act.

4.    **SAME—Reimbursement for Expenses.** The provision of section 3, art. 6, providing that the Game and Fish Warden shall be reimbursed for his actual and necessary expenses, including expenses of catching and shipping game for propagating purposes, to be paid monthly and in the same manner as his salary and traveling expenses, does not constitute a valid appropriation, as the sum certain appropriated is not distinctly specified..

(Syllabus by the Court.)

*Error from Superior Court, Logan County; J. M. Sandlin, Judge.*

Action by J. S. Askew, State Game and Fish Warden against J. A. Menefee, State Treasurer. Judgment for plaintiff, and defendant brings error. Reversed and rendered.

*Chas. West*, Atty. Gen., and *W. C. Reeves*, Asst. Atty. Gen., for plaintiff in error.—Citing: *In re L. E. Waterman Co.*, 68 N. Y. Supp. 892; *Institution, etc. v. Henderson*, 18 L. R. A. 398; *Martin v. Francis*, 13 Kan. 167; *Pickle v. Finley*, 44 S. W. 480; *State v. Seibert*, 99 Mo. 122; *Kingsbury v. Anderson*, 51 Pac. 744; *Ingram v. Colgan*, 28 L. R. A. 187; *State ex rel. v. La Grave*, 41 Pac. 1075; *Redding v. Bell*, 4 Cal. 333; *Stratton v. Green*, 45 Cal. 149; *State v. Wallicks*, 12 Neb. 407; *Idem*, 15 Neb. 609; *Idem*, 16 Neb. 679.

*Welborne & McCalla*, for defendant in error.—Citing: *Campbell v. Com'rs*, 129 Ind. 92; *People ex rel. v. Auditor* (Colo.) 45 Pac. 415; *Ristine v. State*, 20 Ind. 328; *Rotwitt v. Hickman* (Mont.) 8 L. R. A. 403; *Thomas v. Owen*, 4 Md. 189; *Green v. Purnell*, 12 Md. 333; *Reynolds v. Taylor*, 43 Ala. 430; *Shattuck v. Kincaid* (Ore.) 49 Pac. 758; *Henderson v. Burdick* (Wyo.) 24 L. R. A. 266; *Lanham v. Babcock* (Neb.) 40 N. W. 316; *Clayton v. Berry*, 27 Ark. 129; *Carr v. State of Indiana*, 11 L. R. A. 370.

WILLIAMS, J. The sole question for determination in this case is whether sections 9 and 10, art. 4, and section 3, art. 6, c. 19, of the Session Laws of the state of Oklahoma, 1909, being an act entitled, "An act to protect fish, game and birds, regulating hunting, and to prescribe penalties for violation, and providing for the enforcement thereof," approved March 8, 1909, constitute an appropriation as contemplated by section 55, art. 5, of the Constitution of the state of Oklahoma. Said sections are as follows (Sess. Laws Okla. 1909, c. 19, pp. 303, 306):

Section 9, art. 4:

"All fees received by any county clerk, less twenty-five cents, to be retained by him for each license he issues, and all license fees received by any deputy warden, less the fee of twenty-five cents, shall, at the close of each month, be forwarded to the State Game and Fish Warden who will receipt for the same and forthwith turn them over to the State Treasurer. The State Treasurer shall receipt to the State Game and Fish Warden for all moneys so turned over to him, and shall place the same to the credit of the game protection fund of the state." ·

Section 10, art. 4:

"All salaries and expenses of the Game Warden's department shall be paid only from the license fees and other funds received through said department, which shall be known as the game protection fund, and the chief warden shall have the authority at any time to suspend payment of the salaries of deputies or other expenses when necessary to avoid expenses in excess of the income of said department. Any surplus remaining in the game protection fund and not needed for the purpose of that department shall be used for propagating purposes. All funds when converted into the game protection fund shall be paid out by the State Treasurer only upon a warrant, duly signed and executed by the State Game Warden."

Section 3, art. 6:

"The State Game and Fish Warden shall receive an annual salary of eighteen hundred (1,800.00) dollars, and his actual and necessary traveling expenses not to exceed, however, the sum of eight hundred (800.00) dollars a year, to be paid monthly upon the filing of his itemized statement of such expenses duly sworn to. Such salary and expenses to be paid out of the game protection fund. He shall also be reimbursed for his actual and necessary office expenses, including expenses of catching and shipping game for propagating purposes, to be paid monthly and in the same manner as his salary and traveling expenses."

Section 55, art. 5, of the Constitution provides:

"No money shall ever be paid out of the treasury of this state, nor any of its funds, nor any of the funds under its management, except in pursuance of an appropriation by law, nor unless such payments be made within two and one-half years after the passage of such appropriation act, and every such law making a new appropriation, or continuing or reviving an appropriation, shall distinctly specify the sum appropriated and the object to which it is to be applied, and it shall not be sufficient for such law to refer to any other law to fix such sum."

The following authorities support the contention that, where a constitutional provision fixes salaries of officers with a limitation, same neither to be changed nor increased during the term to which such officer was appointed or elected, and a definite time being fixed

Vol. 25—40

by the Constitution or statute for the payment of such officer, such provisions *proprio vigore* constitute an appropriation out of the treasury for the payment thereof as the same becomes due: *Thomas v. Owens,* 4 Md. 189; *State v. Hickman,* 9 Mont. 370, 23 Pac. 740, 8 L. R. A. 403; *State v. Kenney,* 10 Mont. 485, 26 Pac. 197; *State v. Weston,* 4 Neb. 216; *State v. Weston,* 6 Neb. 16; *State v. Burdick,* 4 Wyo. 272, 33 Pac. 125, 24 L. R. A. 266; *People v. Goodykoontz,* 22 Colo. 507, 45 Pac. 414. And some authorities go to the extent that such is the effect when the office is created by statute, and the salary and time of payment also fixed thereby. *Reynolds v. Taylor,* 43 Ala. 420; *Nichols v. Comptroller,* 4 Stew. & P. (Ala.) 154; *Carr v. State,* 127 Ind. 204, 26 N. E. 778, 11 L. R. A. 370, 22 Am. St. Rep. 624. The foregoing rule is criticised and not followed in the case of *Myers v. English,* 9 Cal. 341; *Pickle v. Finley, Comptroller,* 91 Tex. 484, 44 S. W. 480; *Shattuck v. Kincaid,* 31 Or. 379, 49 Pac. 758; *Kingsbury v. Anderson,* 5 Idaho, 771, 51 Pac. 744.

In the case of *Pickle v. Finley, Comptroller, supra,* Mr. Chief Justice Gaines, in speaking for the Supreme Court of Texas, said:

"Leaving out of view the provision in our Constitution which limits all appropriations to two years, the case of *Reynolds v. Taylor,* 43 Ala. 420, sustains the position taken by counsel. The Revised Code of Alabama (section 675) provided that a marshal of the Supreme Court should be appointed by the judges of the court, and that 'the annual salary of such marshal is two thousand dollars.' Another section of the Revised Code (section 210) declares that 'the salaries of all officers are payable on the last day of each month.' It was held that these provisions were an appropriation to pay the salary. We do not concur in this proposition. The only case cited in its support is that of *Nichols v. Comptroller,* 4 Stew. & P. [Ala.] 154, in which the law which fixed the salary in question was couched in very different language. The words were: 'A salary of $1,749, to be paid quarterly out of any money not otherwise appropriated.' The phrase 'not otherwise appropriated' means not appropriated to any other purpose than here is appropriated, and clearly implies an intent to make a present appropriation. But we cannot agree that the mere fixing of the salary of

an officer implies a purpose to appropriate *ipso facto* the money for its payment. Neither do we think that a provision in a general code, directing the periods at which the salaries of officers 'shall be payable,' manifests any such intent. The evident purpose of such a provision is merely to fix the time when the salary may be paid, after the appropriation for its payment has been made. *Thomas v. Owens*, 4 Md. 189, is a leading case upon the same line. The Constitution of Maryland provided that no money should be paid out of the treasury except upon an appropriation made by law, created the office of comptroller, and also provided that he should receive a salary of $2,500, which should not be diminished during his term of office. The words seem to have been 'shall receive'—the same which are employed in the section of our Revised Statutes now under consideration. It was held that this was an appropriation. But it seems to us that the purpose was to name and fix the amount of the salary merely, and not to authorize its payment without a legislative appropriation. In the case of *State v. Hickman*, 9 Mont. 370, 23 Pac. 740 [8 L. R. A. 403], the court followed this decision ,and placed the same construction upon similar provisons in the Constitution of Montana. In the case of *State v. Kenney*, 10 Mont. 485, 26 Pac. 197, the same ruling was applied to a legislative enactment, but in that case the statute not only fixed the salary of the Code commissioner, the relator in the suit, but also made it the duty of the comptroller, upon approval of the work of the commissioners, to draw his warrant for the salaries of the commissioners under the act. A direction that the comptroller shall draw his warrant in favor of a claimant for a certain sum, it would seem, is an appropriation. Such, again, was the case of *State v. Bordelon* 6 La. Ann. 68. There the statute directed that the Treasurer should 'pay' the sum in question 'upon the warrant of the Auditor of Public Accounts out of any moneys in the treasury not otherwise appropriated.' In the case of *State v. Weston*, 4 Neb. 216, the Constitution of Nebraska (article 16, § 25) provided that 'the Auditor shall draw the warrants of the state quarterly for the payment of the salaries of all officers under this Constitution whose compensation is not otherwise provided for, which shall be paid out of any funds not otherwise appropriated.' This was held to be an appropriation. That Constitution also provided that no money should be paid out of the treasury except upon an appropriation made by law, but did not contain the further limitation that no appropriation should extend beyond two years. In the

other cases cited in behalf of the relator which bear upon the point under consideration, the statutes construed contained words which not only fixed the obligation of the state to pay, but also others from which it could be reasonable inferred that the Legislature not only intended to fix the obligation, but also to provide for its payment by making an immediate appropriation."

An appropriation is an authority from the Legislature, given at the proper time and in legal form to the proper officers, to apply a distinctly specified sum out of a designated fund in the treasury in a given year to a specified object or demand against the state. Section 55, art. 5, and section 19, art. 10, of the Constitution of Oklahoma; *Ristine v. State,* 20 Ind. 328. In *Shattuck v. Kincaid, supra,* it is said:

"No particular expression or set form of words is requisite or necessary to the accomplishment of the purpose, and the appropriation may be prospective as well as *in praesenti;* that is, 'it may be made in one year of the revenues to accrue in another or future years, the law being so framed as to address itself to such future revenues.'"

See, also, *Humbert v. Dunn,* 84 Cal. 57, 24 Pac. 111; *Proll v. Dunn,* 80 Cal. 220, 22 Pac. 143; *State v. Kenney,* 10 Mont. 485, 26 Pac. 197; *Pickle v. Finley, Comptroller,* 91 Tex. 484, 44 S. W. 480; *Campbell v. Board Com'rs of State Soldiers' & Sailors' Monument,* 115 Ind. 591, 18 N. E. 33; *Kingsbury v. Anderson,* 5 Idaho, 771, 51 Pac. 744; *People ex rel. Hegwer v. Goodykoontz,* 22 Colo. 507, 45 Pac. 414; *State v. Grimes,* 7 Wash. 191, 34 Pac. 833.

In the case of *State v. Grimes,* 7 Wash. 191, 34 Pac. 833, the court said:

"Let us see whether or not the Legislature has made an appropriation within the requirements of the constitutional article. Sections 3 and 4 of the act creating the State Board of Land Commissioners, approved March 15, 1893 (Laws, p. 387), provides as follows:

"'Sec. 3. That the Commissioner of Public Lands shall receive a salary of $2,000 per annum, and the other members of said board shall each receive a salary of $2,000 per annum, and all members of said board shall be repaid all expenses actually and

necessarily incurred by them in the discharge of their duties, as herein provided, to be paid monthly the same as the salaries and expenses of the other state officers are paid.

"'Sec. 4.   That the said board is hereby authorized to expend a sum of money not to exceed $1,000 per annum for such clerical work as it may require in the performance of its official duties; and that the Auditor of State is hereby authorized and required to issue his warrants for the amounts thus expended upon vouchers therefor, properly authenticated by said board for the payment of the salaries of the members of the said board; and the Treasurer of State is hereby directed to pay the same out of any moneys in the state treasury not otherwise appropriated.'

"It is evident that the Legislature construed the act under consideration as embodying an appropriation for the purpose of carrying the act into effect, for the bill is entitled 'An act to provide for the creation of a State Board of Land Commissioners for the management and disposition of the public lands of the state, making appropriations therefor, and declaring an emergency.'   But, outside of any light which may be thrown upon the intention of the lawmakers by aid of the title, we are clearly of the opinion that the language employed in the body of the act is amply sufficient to show that the intention of the Legislature was to appropriate. They have designated the amount, and have directed that it be paid out of any moneys in the state treasury not otherwise appropriated.   This, we think, is sufficient, and the appropriation contemplated by the Constitution is as plainly indicated as though the formal words 'there is hereby appropriated,' etc., were used.   No arbitrary form of expression is dictated by the Constitution, and none should be required."

Section 4, article 8, of the Constitution of Washington, 1889, is the same as the section of our Constitution now under construction.

In the case of *Carr v. State,* 127 Ind. 204, 26 N. E. 778, 11 L. R. A. 370, 22 Am. St. Rep. 624, it is held:

"An appropriation need not be made in any particular form or in express terms; it may be implied.   It is sufficient if the intention to make the appropriation is clearly evinced by the language employed in the statute upon the subject, or if it is evident that no effect can possibly be given a statute unless it be construed

as making the necessary appropriation. Nothing more is requisite than the designation of the amount and the fund out of which it shall be paid; but a promise to pay, contained in a bond of the state lawfully issued, is not an appropriation."

Section 3, art. 10, of the Constitution of Indiana, 1851, provides that no money shall be drawn from the treasury except in pursuance of appropriations made by law. The Indiana court under such a provision thus holds that the amount and the fund out of which it shall be paid must be designated; the Oklahoma provision (section 5, art. 55), being to the effect that no money shall be paid out of the treasury except in pursuance of an appropriation by law, distinctly specifying the amount appropriated, and the object to which it is to be applied. So, with us, the amount shall be specified, and the object of its application must also be specifically stated; that is, the amount certain shall be stated as well as the purpose for which it is to be used and from what fund.

In every case it is a question of legislative intent to be ascertained under settled rules of construction from the language used, the context, the necessities and purposes for accomplishment in the light of contemporaneous circumstances. It is not essential to its validity that funds to meet the same should be at the time in the treasury; it being sufficient that such funds be levied or other proper means had been provided for. *McCauley v. Brooks,* 16 Cal. 28. No arbitrary form of expression or specified words are dictated or required by the Constitution in making an appropriation, and an appropriation may be made by implication when the language employed reasonably leads to the belief that such was the intention of the Legislature. Nebraska seems to be the only state called to our attention holding to the contrary. Louisiana does not seem to have so held. *State v. Bordelon,* 6 La. Ann. 68. A specific appropriation is defined in the case of *Stratton v. Green,* 45 Cal. 149, as one the amount of which is designated by law, and therefore capable of definite exhaustion, a fund from which an ascertained sum of money was originally segregated, and a portion of that sum being drawn, an unexhausted balance remains, which balance can-

not be thereafter increased except by further legislative appropriation. See to the same effect *Redding v. Bell,* 4 Cal. 333. The case of *Martin v. Francis,* 13 Kan. (2d Ed. 167) 220, harmonizes with the California cases.

Sections 9 and 10, art. 4, *supra,* provide the fund and the manner and the time of payment. Section 3, art. 6, in connection with said two sections under the rule hereinbefore announced, constitutes a valid appropriation as to the salary of the Game Warden in the sum of $1,800 per annum, and his actual and necessary traveling expenses, not to exceed the sum of $800 a year, and in connection with section 13, art. 6, creates an appropriation to pay the salary of not exceeding eight deputy game and fish wardens in the sum of $800 per year each, and their actual, necessary expenses each, not to exceed $600 per annum while actually employed under the direction of the State Game and Fish Warden. But when considered with the limitations of section 55, art. 5, Const., *supra,* and section 56, which provides that: "The general appropriations bill shall embrace nothing but appropriations for the expenses of the executive, legislative, and judicial departments of the state, and for interest on the public debt. The salary of no officer or employee of the state, or any subdivision thereof, shall be increased in such bill, nor shall any appropriation be made therein for any such officer or employee, unless his employment and the amount of his salary, shall have been already provided for by law"—it is clearly shown that a continuing appropriation is not permissible under our Constitution. In none of the authorities that we have been able to find, where a continuing appropriation was permitted, were such sections as 55 and 56, art. 5, *supra,* contained at that time. See, also, *People ex rel. Richardson v. Spruance,* 8 Colo. 530, 9 Pac. 628; *In re Continuing Appropriations,* 18 Colo. 195, 32 Pac. 272. The result is that such appropriation is effective only for 2½ years after the passage of said act by the Legislature.

But the question here further arises: Is the salary of a stenographer employed by the State Game and Fish Warden, such

compensation being paid to said stenographer as an actual and necessary office expense, a valid appropriation? Section 3, art. 6, provides that the State Game and Fish Warden shall be reimbursed for his actual office expenses, including expenses of catching and shipping game for propagating purposes, to be paid monthly in the same manner as his salary and traveling expenses. A valid appropriation under the provisions of our Constitution must distinctly specify the sum and the object to which it is to be applied. The object is distinctly specified, but the sum appropriated for actual and necessary office expenses is not set out or distinctly specified in any of the provisions of the act called to our attention, and in that respect the act falls. Under the provisions of this act, it seems that for such sum or sums as may be expended by the game and fish commissioner for actual and necessary office expenses a debt against such fund is created, but can be realized on by an appropriation only, specifically designating the sum, as well as the object or purposes for which the appropriation is made.

The judgment of the lower court is reversed and remanded, with instructions to dismiss the petition.

All the Justices concur.