[Civil No. 3067.  Filed September 25, 1931.]

[3 Pac. (2d) 275.]

DUDLEY W. WINDES, Petitioner, v. ANA FROH-MILLER, as State Auditor of the State of Arizona, Respondent.

Mr. Dudley W. Windes, *in pro. per.*

Mr. K. Berry Peterson, Attorney General, for Respondent.

Messrs. Chalmers, Fennemore & Nairn, Mr. J. Early Craig, Messrs. Moeur & Moeur, Messrs. Sloan, Holton, McKesson & Scott, Messrs. Struckmeyer & Jennings, Messrs. Armstrong, Kramer, Morrison & Roche, Messrs. Moore & Shimmel, Mr. Samuel White, Mr. Floyd M. Stahl, Mr. T. A. Carson, Mr. Luther P. Spalding, and Mr. L. M. Laney, *Amici Curiae.*

FICKETT, Superior Judge.—The state legislature in 1927 increased the salary of the judges of the Supreme Court, and in 1929 increased the salaries of the judges of the superior courts, including Maricopa county, and of the members of the corporation commission. But in conformity with the state Constitution these increases could not take effect as to the occupants of these offices until after they had again presented themselves for election; the above-mentioned courts and commission being continuing bodies, the terms of the members of which are not coterminous.

Section 17, part 2, of article 4 of the Constitution of Arizona, prior to the amendment, read as follows:

"The Legislature shall never grant any extra compensation to any public officer, agent, servant, or contractor, after the services shall have been rendered or the contract entered into, nor shall the compensation of any public officer be increased or diminished during his term of office."

At the general election held the fourth day of November, 1930 (see Laws 1929, chap. 71), the people of the state of Arizona amended said section 17, part 2, of article 4 of the Constitution of Arizona, to read as follows:

"The Legislature shall never gránt any extra compensation to any public officer, agent, servant, or contractor, after the services shall have been rendered or the contract entered into, nor shall the compensation of any public officer be increased or diminished during his term of office, provided, however, that when any legislative increase or decrease in the compensation of the members of any court, board, or commission, composed of two or more officers or persons, whose respective terms of office are not coterminous, *has heretofore* or shall hereafter become effective as to any member of such court, board, or commission, *it shall be effective from such date as to each of the members thereof.*" (Italics ours.)

which said amendment was duly proclaimed by the Governor of the state of Arizona on the first day of December, 1930, to be a part of the Constitution of Arizona.

Under this amendment, the petitioner and Judge M. T. PHELPS, as judges of the superior court of Maricopa county, Judge A. C. LOCKWOOD, of the Supreme Court, and W. D. Claypool and Loren Vaughn, of the corporation commission, presented in January, 1931, their claims to respondent, as state auditor, for back salary, and demanded that warrants for such increased salary from the first Monday in January, 1929, be paid. The respondent refused to issue warrants, but did issue certificates of indebtedness in the amounts of the respective claims, and filed with, and submitted the same to, the legislature, which refused to appropriate funds for their payment.

Petitioner, within the time allowed by law, instituted this proceeding for himself and as assignee of the other above-named claimants.

The Attorney General, who represents the state auditor, admits that the constitutional amendment hereinabove set forth specifically provides that the petitioner shall be paid the back salary which he seeks, but contends that because the legislature has

not made an appropriation to meet the payment petitioner cannot enforce the same.

Section 10 of article 6 of the Arizona Constitution reads, in part, as follows:

"The salaries of the judges of the Supreme Court *shall be paid* by the State. One-half of the salary of each of the judges of the superior court shall be paid by the State, and the other one-half by the county for which he is elected. Until otherwise provided by law, each of the judges of the Supreme Court shall receive an annual salary of five thousand dollars. Until otherwise provided by law, the judges of the superior courts in and for the counties of Maricopa, . . . shall each receive four thousand dollars per annum." . . . ; (Italics ours.)

Section 18 of article 15 of the Constitution reads as follows:

"Until otherwise provided by law, each [corporation] Commissioner shall receive a salary of three thousand dollars a year."

These sections clearly show that, unless there is some specific provision of the Constitution to the contrary, the people of the state of Arizona have ordered that these salaries be paid independent of, and without the necessity of, any legislative action or appropriation, for this language in itself constitutes an appropriation by the people; it being the law that no specific language is necessary to make an appropriation, for the test is as to whether or not the people have expressed an intention that the money in question be paid. *Shattuck* v. *Kincaid,* 31 Or. 379, 49 Pac. 758; *Carr* v. *State,* 127 Ind. 209, 22 Am. St. Rep. 624, 11 L. R. A. 370, 26 N. E. 778; *State* v. *Jorgenson,* 25 N. D. 539, 49 L. R. A. (N. S.) 67, 142 N. W. 450; *Menefee* v. *Askew,* 25 Okl. 623, 27 L. R. A. (N. S.) 537, 107 Pac. 159; *Humbert* v. *Dunn,* 84 Cal. 57, 24 Pac. 111; *State ex rel. Rotwitt* v: *Hickman,* 9 Mont. 370, 8 L. R. A. 403, 23 Pac. 740; *State ex rel. Buck* v. *Hickman,* 10 Mont. 497, 26 Pac. 386.

Respondent contends that section 20, part 2, of article 4 of the Arizona Constitution, which reads as follows: "The general appropriation bill shall embrace nothing but approprations for the different departments of the State, for State institutions, for public schools, and for interest on the public debt. All other appropriations shall be made by separate bills, each embracing but one subject," amounts to a granting to the legislature of the exclusive power to make appropriations for the salaries of officers even though the Constitution has provided for their payment. There is no possible way to attribute to this article such a meaning. This provision is telling the legislature what it can NOT include in the appropriation bill. It is a limiting rather than a granting power. It falls far short of providing that the general appropriation bill MUST contain an appropriation for the salaries of constitutional officers, and it certainly does not provide that the people in their Constitution cannot make an appropriation independent of the legislature.

Respondent also contends that certain statutes support her contention. But it would be absurd to say that the legislature, which is the creature of the people through their Constitution, could enact a law which would take precedence over constitutional provisions enacted by the people themselves. This court will not violate the people's trust by attempting to subvert their Constitution to any legislative enactment.

In *State* v. *Osborne*, 14 Ariz. 185, 125 Pac. 884, this court said:

"The legislature are but representatives delegated to perform duties in subordination to the will of the people. The legislature speaks for the people. The sovereign people speak in the language of their constitution. Their will expressed in the constitution is the will of the sovereign itself. The legislature

may speak but only within the limitations of the fundamental law. The courts may interpret and administer the law, but only in keeping with the oath of the judges to support the constitution. The executive may execute the law, but under the guise of its execution may not lay a hand against the sovereign will."

The above are the only two contentions advanced by respondent, and their mere statement reveals that her position is without merit. We could rest the case here, but because of the fundamental principles involved we prefer to refer to the authorities, nearly all of which support our conclusion, which is that where the Constitution creates an office and declares that the officer shall receive his salary, that amounts in law to an appropriation, and no legislative action is necessary to enforce payment of such salary.

The leading case on this point was decided in 1853, by the Court of Appeals of Maryland, in *Thomas, Comptroller,* v. *Owens, Treasurer,* 4 Md. 189. This was an application for a writ of *mandamus* to compel the payment of the salary of the comptroller. The state treasurer refused to pay the same because no appropriation therefor had been made by the legislature. The Constitution of the state of Maryland (article 6, § 1) created the office of comptroller and provided that he "shall receive an annual salary of two thousand five hundred dollars." The Maryland Constitution also directed that no money should be drawn from the state treasury except in accordance with appropriation made by law. The Court of Appeals of that state enunciated the principles involved with such logic and clarity that we choose to quote its language rather than to elucidate extensively ourselves upon them. The court said:

"We are of the opinion the constitution, *pro prio vigore,* makes such appropriation.

"Under our system of government its powers are wisely distributed to different departments; each and

all are subordinate to the constitution, which creates and defines their limits; whatever it commands is the supreme and uncontrollable law of the land. . . .

"It [meaning the provision of the constitution that no money should be disbursed without an appropriation] was obviously inserted to prevent the expenditure of the people's treasure without their consent, either as expressed by themselves in the organic law, or by their representatives in constitutional acts of legislation. . . .

"These being the purposes and objects of the clause, the question is:—Have the people given their consent to the payment of the salary of the Comptroller? That they have done so is palpably manifest. They have said he 'shall receive an annual salary of two thousand five hundred dollars.' They have not merely said he *may claim* such a sum, but, emphatically, that he *'shall receive'* it. It is impossible for human language to be less ambiguous or more positive. The people, in their organic law,—which is paramount to all other law—have not only given their consent, but they have imperatively issued their commands that the particular officer 'shall receive' it. . . .

"An opposite interpretation would countenance this paradox, that a co-ordinate branch of the government could stop its whole machinery, by refusing to pay the salaries of those upon whom is devolved the discharge of the duties of the other branches; and this too when the constitution expressly declares that these officers 'shall receive' their salaries, and that they 'shall not be diminished.' It would be giving to the legislature a practical and real omnipotence, with the same breath which professes to restrict their powers within narrow limits. It is prescribing limits, and declaring that those limits may be passed at pleasure.' . . .

"Now, it is presumed, it would not be contended by any one, however hazardous, that if the legislature were to pass an act diminishing the salary of the governor, or of any other officer whose salary is fixed by the constitution, that such an exercise of power would be rightful and constitutional. If it be not competent to the legislature to take away a part, by what process of reasoning can it be maintained that

they can take away the whole? And yet this is the extent to which the argument addressed to us goes. It seems to us to be but necessary to state the proposition, to cause its instantaneous rejection.''

This vital principle announced in *Thomas* v. *Owens, supra,* has remained inflexible under every test, and has been accepted for years without a question in nearly every state which has considered the question, as evidenced by the following authorities: *People ex rel. Hegwer* v. *Goodykoontz,* 22 Colo. 507, 45 Pac. 414; *State ex rel. Fornoff* v. *Sargent,* 18 N. M. 272, 136 Pac. 602; *State ex rel. Henderson* v. *Burdick,* 4 Wyo. 272, 24 L. R. A. 266, 33 Pac. 125; *State ex rel. Roberts* v. *Weston,* 4 Neb. 216; *State ex rel. Brown* v. *Weston,* 6 Neb. 16; *Weston, Auditor,* v. *Herdman,* 64 Neb. 24, 89 N. W. 384; *Green* v. *Purnell,* 12 Md. 329; *Dorman* v. *Sargent,* 20 N. M. 413, 150 Pac. 1021; *Reed* v. *Huston,* 24 Idaho 26, Ann. Cas. 1915A 1237, 132 Pac. 109; *State ex rel. Birdzell et al.* v. *Jorgenson,* 25 N. D. 539, 49 L. R. A. (N. S.) 67, 142 N. W. 450; *State ex rel. Buck* v. *Hickman,* 10 Mont. 497, 26 Pac. 386; *Carr et al.* v. *State ex rel. Du Coetlosquet,* 127 Ind. 209, 22 Am. St. Rep. 624, 11 L. R. A. 370, 26 N. E. 778; *State ex rel. Buchanan* v. *Jennings,* 68 S. C. 411, 47 S. E. 683; *People ex rel. Fulton* v. *O'Ryan,* 71 Colo. 69, 204 Pac. 86.

The prayer of the petitioner for a peremptory writ of *mandamus* is therefore granted.

DAVE W. LING and E. L. GREEN, Superior Judges, concur.

McALISTER, C. J., and LOCKWOOD and ROSS, JJ., having disqualified themselves, Honorable FRED W. FICKETT, Judge of the Superior Court of Pima County, Honorable E. L. GREEN, Judge of the Superior Court of Pinal County, and Honorable DAVE W. LING, Judge of the Superior Court of Greenlee County, were called to sit in this case.