**STATE ex rel. TELLE v. CARTER, State Auditor, et al.**

No. 25475.   Dec. 4, 1934.

Withdrawn, Corrected, and Refiled, and Rehearing Denied Dec. 14, 1934.

E. S. Ratliff, for petitioner.

J. Berry King, Atty. Gen., and Randell S. Cobb, Asst. Atty. Gen., for respondents.

SWINDALL, J. A. R. Telle, on behalf of himself and others similarly situated, instituted this original action wherein he seeks a writ of mandamus to compel the State Auditor to issue to him a warrant and the State Treasurer to pay said warrant in the sum of $225 calculated to be due him as balance of his salary as court reporter for the Twenty-Sixth judicial district of the state of Oklahoma. The balance is based

on an additional amount of $25 for such salary for the months of July, 1933, to and including March, 1934. The answer of respondents admits that such a claim was filed on April 3, 1934, with the State Auditor and that said claim was disallowed. It is admitted that for each of said months the petitioner filed a salary claim for the sum of $150, that $125 was allowed and paid on each such claim, and that the amount of $25 was disallowed for each of said months. Eighteen hundred dollars per annum is the amount provided by law for salaries of such number of court reporters as exist by virtue of statute.

The petitioner pleads that others similarly situated consist of various district court reporters within the state of Oklahoma whose positions and offices have been created by law and the salaries therefor fixed by legislative enactment, 45 in number, for the various judicial districts of the state, as well as numerous others, the exact number being unknown to relator, whose positions and offices have been created by law and whose compensation has been fixed and determined by enactment of law; and relator, therefore, brings this action, not only upon behalf of himself as district court reporter for the Twenty-Sixth judicial district, but for all other district court reporters within the state of Oklahoma similarly situated, and upon behalf of all other appointive state employees and officials similarly situated, as well.

In order to clearly present the questions of law involved in this case it is necessary to consider certain constitutional and statutory enactments of this state.

The territorial Legislature prior to the erection of the state enacted article 1, Statutes of Oklahoma 1893, being an act to provide court reporters for the district courts of the territory of Oklahoma. Section 1580, Statutes of 1893, containing said enactment, reads as follows:

"The judge of the district court in each judicial district shall appoint, whenever in his judgment it will expedite public business and tend to the more economical administration of justice, a shorthand reporter who shall be well skilled in the art of stenography, and competent to perform the duties required of him, which competency shall be ascertained by the applicant writing correctly one hundred and fifty words per minute, for five consecutive minutes in open court, the matter written not being previously known to him."

This section was extended in force by the Schedule to the Constitution and was adopted into the Revised Laws of Oklahoma 1910 as section 1785. Section 1787, R. L. 1910, fixed the compensation for the stenographers for the district courts at $1,200 per annum, to be paid out of the state treasury in the same manner as salaries of the district judge.

The stenographer was also allowed to charge and receive certain compensation for writing transcripts, a consideration of which is not relevant to the question now before the court. The last two mentioned sections are brought forward as sections 3820 and 3822 of the Oklahoma Statutes 1931. However, in 1919 the Legislature enacted House Bill No. 315, chapter 211, S. L. 1919, entitled "An Act creating certain clerical, stenographic and other positions in certain state departments; fixing the salaries therefor, and declaring an emergency." The first paragraph of section 1 provides:

"That the following clerical, stenographic and other positions are hereby created, and the amounts set opposite each are hereby fixed as the annual salary for the same, which shall be paid out of funds appropriated therefor, monthly, upon warrants issued by the State Auditor"

—then shows certain clerical and stenographic positions in the offices of the executive department, and in the last paragraph of that section we find the following:

"District Court Reporters:

"Thirty-four (34) district court reporters at an annual salary of $1,800 each—$61,200.00."

Section 2 of that act provides, among other things:

"That the heads of the departments, except as otherwise herein provided, are hereby authorized and empowered to appoint persons to hold positions created in their respective departments. The persons so appointed shall hold office at the will of such state officer and in the case of all boards and commissions, such board or commission shall, by vote thereof, except as otherwise herein provided, appoint persons to hold positions created under such boards or commissions by this act, and the said persons so appointed shall hold office at the will of such officer, boards or commissions making said appointment, provided that any board or commission may authorize the secretary of such board or commission to make said appointment."

That act is carried forward as section 111,

C. O. S. 1921, and, with some amendments, as section 3518, O. S. 1931; the paragraph relating to the fixing of salaries and making of appropriations and the clause relating to district court reporters is similar in each statute.

The petitioner seeks to distinguish and avoid a decision of this court in Meyer, State Auditor, v. Clift, 31 Okla. 793, 123 P. 1042, by asserting that under the act there considered, section 1580, Statutes of 1893, as brought forward in the other Codes, the number of court reporters was not definite, whereas, it is asserted, that now under chapter 162, S. L. 1933, a definite provision is made for 45 district court reporters. It is further stated: "That court reporters and each of them has been created by an act of the Legislature, and their salaries fixed and determined thereby," and "nothing is indefinite whatsoever as to the number of court reporters employed on an annual basis within the state of Oklahoma as was in the case of Meyer, State Auditor, v. Clift. Section 3518 is definite and fixes definitely the number of court reporters created at that time, and the statutes which follow in the wake of section 3518 created eleven more court reporters, which, added to the 34 created by section 3518, constitute 45." The statutes which follow section 3518 do not create eleven more court reporters. Chapter 162, S. L. 1931, makes an appropriation in the amount of $67,000 for each of the fiscal years ending July, 1934-35, for court reporters, and the appropriation thereby made is calculated on a basis of there being 45 court reporters provided by law. The words used in the appropriation act likewise have only calculated the salaries of such court reporters at $1,500 per annum each, but it is beyond cavil that no positions are **created** by that enactment. Chapter 162 is an appropriation bill and does not create any additional positions. It appropriates salary for more court reporters than there are positions. The general appropriation bill, chapter 27, S. L. 1927, appropriates salary for 49 court reporters, but we fail to find any law creating that number of court reporters, hence, in so far as the bill appropriates salaries for positions not then created, it violates section 56, article 5, of the Constitution. Chapter 211, sec. 1, S. L. 1919 (3518, O. S. 1931), creates positions for 34 district court reporters and fixes the annual salary for said court reporters so created at $1,800 each. It is to be noted that under enactments prior to chapter 211, S. L. 1919, supra, the matter of whether

there should be a court reporter in any given judicial district was left entirely to the judgment and discretion of the district judges of the respective districts, while by the enactment of chapter 211, S. L. 1919, the number of district court reporters was fixed at 34, and their positions created; and it was still left discretionary with the district judges to fill the position, and to pass upon the qualifications of the court reporter, under section 3820, O. S. 1931. The Legislature has created more judgeships than it has court reporters. In some of the judicial districts the Legislature provided for several judges. It may have intended that in such districts one court reporter could serve more than one judge. It did not express such intention, and if such was its intention, it did not provide how such court reporter should be selected, and we cannot determine from the act or other acts relating to that subject what was the intent of the Legislature further than it is clear that the Legislature has only created 35 court reporters. Section 1787, R. L. 1910, fixing the annual salary at $1,200, was repealed by implication by section 1, chapter 211, S. L. 1919, fixing the salary of court reporters at $1,800 per year. There is now no statutory provision of law whereby it clearly appears that there exists 45 district court reporter positions within this state; in fact, there is clearly provision of law for only 35 such positions.

As heretofore stated, 34 such positions were created by chapter 211, sec. 1, S. L. 1919; the position of 1 additional reporter was provided by chapter 44, S. L. 1927, p. 65, sec 3. In 1923 an additional position was created by S. L. 1923, chapter 161, p. 263, for the Twenty-Seventh judicial district, but subsequently, by chapter 96, S. L. 1933, section 5, p. 183, that position was abolished, effective 90 days after approval, which occurred on May 6, 1933. In 1921 an additional judge was created in and for the Third judicial district by chapter 47, S. L. 1921, p. 67, but no mention was made of a reporter. Again, by chapter 58, S. L. 1921, p. 78, an additional judge was provided and designated as district No. 16, but no provision was made for a court reporter. In the year 1923, by chapter 56, S. L. 1923, p. 100, two additional judgeships were created for the Thirteenth judicial district, but no provision was made for additional court reporters. Again, by chapter 35, S. L. 1923, p. 48, an additional judgeship was created for the Fourteenth judicial district, but no additional court reporter was provided. In the

year 1921, chapter 3, S. L. 1921, p. 3, two additional judgeships were created for the Twenty-First judicial district, but no additional court reporters were allowed. Again in 1921, by chapter 69, S. L. 1921, p. 90, an additional judgeship was created for the Eighth judicial district, and no provision was made for an additional reporter. Again, in 1921, chapter 104, S. L. 1921, p. 130, an additional judgeship was created for judicial district 22, but no provision was made for additional court reporter. In 1927, by chapter 46, S. L. 1927, p. 67, an additional judgeship was created for district 22; however, in that act no provision was made for an additional court reporter. In the year 1931, by chapter 21, art 2, S. L. 1931, p. 25, an additional judgeship was created for judicial district No. 12, to continue until December 31, 1934, but there was no provision made for an additional court reporter. There is no independent enactment of law providing for additional court reporters. so it is observed that the statement made by petitioner that eleven more court reporters were added by the statutes that followed in the wake of section 3518, supra, is error.

Petitioner seeks to include himself in a purported group of 45 court reporters, not within a group of 35 court reporters actually existing by virtue of legislative enactments creating such positions; however, he does allege that his employment was by the district judge of the Twenty-Sixth judicial district of the state of Oklahoma, and that he has held the position of court reporter in that district since 1918, which brings him under the terms and provisions of chapter 211, S. L. 1919, section 3518, O. S. 1931, fixing the number of court reporters at that time at 34; and he further alleges that he brings this action in his own behalf and for persons similarly situated, which must mean persons holding clerical, stenographic, and other positions under chapter 211, S. L. 1919, section 3518, O. S. 1931, supra, or other acts of the Legislature similar in language and creating like positions, fixing the amount of the salary, and providing the time and manner of paying such salaries.

This brings us to a consideration of certain sections of our Constitution, and decisions of this court construing same, and certain legislative enactments made pursuant to the constitutional provisions.

Clearly it appears from our Constitution that it was the intention of the framers thereof and the people in adopting the same to fix the salaries of constitutional officers and to provide that the salaries and emoluments of constitutional and legislative officers shall not be changed after the election or appointment, or during the term of office of any such officers, unless by operation of law enacted prior to such election or appointment. Commencing with section 21 of article 5 it provides that members of the Legislature shall receive $6 per diem for their services during the session of the Legislature and 10 cents per mile for every mile of necessary travel in going to and returning from the place of meeting of the Legislature on the most usual route, and shall receive no other compensation; and further provides, except during the first session thereof, members of the Legislature shall only receive $2 per day for their services after 60 days of such session have elapsed. Section 49, article 5, declares that the Legislature shall not increase the number or emoluments of its employees or the employees of either house thereof, except by general law, which shall not take effect during the term at which such increase is made. Passing to article 6, which deals with the executive department and its officers, we find in section 34 that each of the officers in this article named shall at stated times during his continuance in office receive for his services a compensation which shall not be increased or diminished during the term for which he shall have been elected, nor shall he receive to his use any fees, costs, or perquisites of office or other compensation. And by section 10 of article 23 it is provided that:

"Except wherein otherwise provided in this Constitution, in no case shall the salary or emoluments of any public official be changed after his election or appointment, or during his term of office, unless by operation of law enacted prior to such election or appointment; nor shall the term of any public official be extended beyond the period for which he was elected or appointed: Provided, that all officers within this state shall continue to perform the duties of their offices until their successors shall be duly qualified."

That section does not apply to the clerical, stenographic and other positions created by section 1, chapter 211, S. L. 1919, now section 3518, O. S. 1931, supra, because such persons do not hold office for a fixed and definite term. Board of County Commissioners of Muskogee County v. Hart, 29 Okla. 693, 119 P. 132; State ex rel. Matlack v. Oklahoma City, 38 Okla. 349, 134 P. 59. But

54

a position created by law may be abolished or changed only by amending or repealing the law creating it, by law enacted for that purpose, and the salaries fixed in an act of the Legislature creating an office cannot be increased or diminished in a general appropriation bill. Section 56, article 5, Constitution. Section 15, article 25, provides that the officers therein named shall until otherwise provided by law receive annually as compensation for their services the sums stated in said section. Section 16, article 25, provides that the salaries of justices of the Supreme Court of the state shall be $4,000 per annum each, and that that of judges of the district courts shall be $3,000 per annum each, until changed by the Legislature.

Section 17 of article 25 provides that:

"The members of the Board of Agriculture, Bank Commissioner, Clerk of the Supreme Court, and all other state officers except as herein provided, or such as may be created, and all clerks and assistants, shall receive such compensation for their services as may be provided by law."

Not such compensation as the Legislature may fix in a general appropriation bill, unless that is the compensation provided by law. The Legislature may by law change the compensation of such clerical, stenographic, and other positions created by section 1, chapter 211, but it is by section 56, article 5, of the Constitution prohibited from doing so in the general appropriation bill for 1933 or any other year.

Section 1 of article 10 provides that:

"The fiscal year shall commence on the first day of July in each year, unless otherwise provided by law."

Section 2 of article 10 provides that:

"The Legislature shall provide by law for an annual tax sufficient, with other resources, to defray the estimated ordinary expenses of the state for each fiscal year."

And, section 3 of article 10 provides that:

"Whenever the expenses of any fiscal year shall exceed the income, the Legislature may provide for levying a tax for the ensuing fiscal year which, with other resources, shall be sufficient to pay the deficiency, as well as the estimated ordinary expenses of the state for the ensuing year."

Section 56 of article 5 provides that:

"The general appropriation bill shall embrace nothing but appropriations for the expenses of the executive, legislative, and judicial departments of the state, and for interest on the public debt. The salary of no officer or employee of the state or any sub-division thereof shall be increased in such bill, nor shall any appropriation be made therein for any such officer or employee, unless his employment and the amount of his salary, shall have been already provided for by law. All other appropriations shall be made by separate bills, each embracing but one subject."

And section 55, article 5, provides that:

"No money shall ever be paid out of the treasury of this state, nor any of its funds, nor any of the funds under its management, except in pursuance of an appropriation by law, nor unless such payments be made within two and one-half years after the passage of such appropriation act, and every such law making a new appropriation, or continuing or reviving an appropriation, shall distinctly specify the sum appropriated and the object to which it is to be applied, and it shall not be sufficient for such law to refer to any other law to fix such sum."

So, it appears to us that the framers of the Constitution, and the people in adopting the same, intended to prevent the wasteful and fraudulent and indefinite appropriations of the people's money, and that the Legislature and the people shall be notified of the specific sum appropriated and of the specific purpose of the appropriation.

It is contended by the respondents that the pleadings and the facts bring this case within the facts and rule of law announced by this court in the case of Meyer, State Auditor, v. Clift, 31 Okla. 793, 123 P. 1042. That case arose when section 1580, Statutes of 1893 (1785, R. L. 1910), was in force. The language of that section and the section providing for the compensation of the court reporters, section 1787, R. L. 1910, is materially different from the language employed in section 1 of chapter 211, S. L. 1919, and in our opinion that case has no bearing upon the issues involved in the case at bar.

It is also contended by the respondents that the case of Mcnefee, State Treasurer, v. Askew, State Game and Fish Warden, 25 Okla. 623, 107 P. 159, settles the law in this case against the contention of the petitioner. We cannot agree with that contention. A careful consideration of that case, in our opinion, tends to sustain the contention of the petitioner. The act of the Legislature there under consideration is found in chapter 19, article 1, to and including article 6 of said act, the title to the bill being: "An Act to protect fish, game and birds, regulating hunting, and to prescribe penalties for violation, and providing for the enforcement

thereof." Sections 9 and 10 of article 4 are as follows:

Section 9. "All fees received by any county clerk, less 25 cents, to be retained by him for each license he issues, and all license fees received by any deputy warden, less the fee of 25 cents, shall, at the close of each month, be forwarded to the State Game and Fish Warden who will receipt for the same and forthwith turn them over to the State Treasurer. The State Treasurer shall receipt to the State Game and Fish Warden for all moneys so turned over to him, and shall place the same to the credit of the game protection fund of the state."

Section 10. "All salaries and expenses of the Game Warden's department shall be paid only from the license fees and other funds received through said department, which shall be known as the game protection fund, and the chief warden shall have the authority at any time to suspend payment of the salaries of deputies or other expenses when necessary to avoid expenses in excess of the income of said department. Any surplus remaining in the game protection fund and not needed for the purpose of that department shall be used for propagating purposes. All funds when converted into the game protection fund shall be paid out by the State Treasurer only upon a warrant, duly signed and executed by the State Game Warden."

Section 3, article 6, provides that:

"The State Game and Fish Warden shall receive an annual salary of $1,800, and his actual and necessary traveling expenses not to exceed, however, the sum of $800 a year, to be paid monthly upon the filing of his itemized statement of such expenses duly sworn to. Such salary and expenses to be paid out of the game protection fund. He shall also be reimbursed for his actual and necessary office expenses, including expenses of catching and shipping game for propagating purposes, to be paid monthly and in the same manner as his salary and traveling expenses."

Section 13 of article 6 provides:

"The State Game and Fish Warden may appoint not to exceed eight (8) deputy game and fish wardens, as the needs of the state may require. Such game and fish wardens shall hold office during the pleasure of the State Game and Fish Warden and shall have the same authority in the enforcement of the game. bird and fish laws of the state as is conferred on the State Game and Fish Warden, subject at all times to his supervision and control."

Section 14, article 6, of said chapter provides that:

"Each deputy game and fish warden shall receive an annual salary of $800, in addition to other fees, and his actual and necessary expenses, not to exceed $600 in any year, while he is actually employed under the direction of the State Game and Fish Warden, upon approval of vouchers duly sworn to. Said salary and expenses to be provided for as in case of the State Game and Fish Warden."

The syllabus in the Menefee v. Askew Case, supra, is as follows:

1. "An 'appropriation' in this state is an authority of the Legislature, given at the proper time and in legal form to the proper officers, to apply a distinctly specified sum, from a designated fund out of the treasury in a given year, for a specified object or demand against the state."

2. "No arbitrary form of expression or particular words are required by the Constitution in making an appropriation, which may be made by implication when the language employed reasonably leads to the belief that such was the intention of the Legislature."

3. "Sections 9, 10, art. 4, c. 19, p. 303, Sess. Laws 1909, in connection with sections 3, 13, art. 6, c. 19, constitute a valid appropriation as to the salary of the Game and Fish Warden in the sum of $1,800 per annum, and his actual necessary traveling expenses, not to exceed $800 per annum, and the salaries of not exceeding eight deputy game and fish wardens each in the sum of $800 per year and their each actual, necessary expenses, not to exceed $600 per annum, while actually employed under the direction of the State Game and Fish Warden, as controlled by sections 55 and 56, art. 5, of the Constitution, but continue in effect as an appropriation for two years and one-half only after the passage of said act."

4. "The provision of section 3, art. 6, providing that the Game and Fish Warden shall be reimbursed for his actual and necessary expenses, including expenses of catching and shipping game for propagating purposes, to be paid monthly and in the same manner as his salary and traveling expenses, does not constitute a valid appropriation, as the sum certain appropriated is not distinctly specified."

Relative to the salaries of court reporters, and certain other clerical and stenographic and other positions, created by chapter 211, S. L. 1919, the first paragraph of section 1 is that the following amounts set opposite each are thereby fixed as the annual salaries of the same, which shall be paid out of any funds appropriated therefor, monthly, upon warrants issued by the State Auditor; then said act, in the last paragraph of said section, specifically fixes the salaries of 34 dis-

trict court reporters at $1,800 each per annum. The language in said act is as definite and certain as the language used in the act fixing the salary of the State Game and Fish Warden in 1909, and constitutes an appropriation to pay the salaries of the clerical, stenographic, and other positions created by said act. It is contended however, that in the Menefee v. Askew Case the appropriation was for only two and one-half years. It is true that the amount definitely set apart for some purpose or use can, under the Constitution, only be set apart for two and one-half years. In other words, if there were any of the funds appropriated in 1909 remaining in the game and fish fund beyond two and one-half years after the same were appropriated, then they could and should be otherwise appropriated by the Legislature, because the Fish and Game Warden and his deputies are required to present their claims against that appropriation within two and one-half years after the passage of the appropriation act, or after the appropriation is made, and the funds set apart for some purpose or use, but that does not mean, and the court did not hold, that if the law remained in force and effect for another fiscal year commencing on the first day of July following the making of the appropriation, that there would not be appropriated by operation of law a sum sufficient to pay the annual salaries and expenses of the Fish and Game Warden and his deputies for that year, and following fiscal years so long as the law remained unchanged, provided, that in the act there is language clearly showing a legislative intent to appropriate funds for a definite use or purpose for a longer period than one fiscal year. If the law had the force and vigor to appropriate funds at the time of its passage, it had equal force and vigor thereafter until it was changed or repealed, provided, such legislative intent clearly appears. The funds appropriated had to be used for the purposes appropriated within two and one-half years after the passage of the act, but the act did not cease to annually appropriate funds for the same purposes thereafter. That is, it was clearly the intention of the framers of the Constitution that any party claiming any portions of an appropriation setting apart for some purpose or uses a definite sum of money, must make claim for same within two and one-half years after the appropriation is made, and if claim is not so made, thereafter the Legislature is authorized to make whatever disposition of the balance of such appropriation as it may determine is for the best interests of the state, limited and governed in so doing by the constitutional provisions for making new appropriations or for reviving or continuing an appropriation. Section 55, article 5, and section 19, article 10, relating to diversion of funds. Such is the only construction consistent with section 55 of article 5 of our Constitution, and with the authorities cited in the Menefee opinion, and the language used in the act there under consideration and by the court in the case.

In section 10, article 4, of that act we find this language:

"Any surplus remaining in the game protection fund and not needed for the purpose of that department shall be used for propagating purposes. All funds when converted into the game protection fund shall be paid out by the State Treasurer only upon a warrant, duly signed and executed by the State Game Warden."

The first paragraph of the opinion in that case reads:

"The sole question for determination in this case is whether sections 9 and 10, art. 4, and section 3, art. 6, c. 19, of the Session Laws of the state of Oklahoma, 1909, being an act entitled, 'An act to protect fish, game and birds, regulating hunting. and to prescribe penalties for violation, and providing for the enforcement thereof,' approved March 8, 1909, constitute an appropriation as contemplated by section 55, art. 5, of the Constitution of the state of Oklahoma."

The court concludes that the sections mentioned in said act make a valid appropriation as to the salaries of the Game and Fish Warden and his actual necessary traveling expenses not to exceed $800 per annum and the salaries of not exceeding eight deputies in the sum of $800 each and the actual necessary expenses not to exceed $600 each per annum, but not for propagating purposes, and that any surplus balance of said appropriations remaining in the game protection fund and not needed for the purposes or uses for which it was appropriated does not constitute a continuing appropriation in the game protection fund, and that any part of the appropriation not used for the purposes for which it was set apart within two and one-half years after the passage of said act or the setting apart of said fund for definite uses or purposes, then that such balance must be taken care of in the manner authorized and provided for in the Constitution. and that any surplus remaining in the game protection fund and not needed for the purposes of paying the salaries and expenses definitely fixed in the appropriation could not be lawfully used for propagating pur-

poses, while the question presented to and determined by the court in that case is whether certain sections of the act there under consideration constitute an appropriation. The court evidently went beyond that question to advise the State Treasurer not to pay warrants drawn by the Game and Fish Warden for propagating purposes or any other purpose except such as were covered by the appropriation as determined by the court.

Is the appropriation here involved specific within the intent of the Constitution? It is specific in the amount to be paid—$1,800 to each court reporter, and the sums to be paid other persons designated in the act; it is specific as to the positions created, and the number of persons to be paid; it is specific as to the time the moneys shall be paid each person, monthly in each year; it is specific as to the purposes for which the appropriation shall be used—the salaries of certain designated stenographers, clerks, and other positions designated in the act; it is to be paid out of the state treasury monthly upon warrants issued by the State Auditor out of funds appropriated therefor. It is not necessary to designate the fund out of which the money is drawn. Riley v. Carter, 165 Okla. 262, 25 P. (2d) 666, 687; Edwards v. Carter, 167 Okla. 287, 29 P. (2d) 610; 36 Cyc. 892, par. c. It is not necessary for the bill to contain the words "not otherwise appropriated" for the reason the State Treasurer is not authorized to pay out of money otherwise appropriated.

Again referring to Menefee v. Askew, supra, at page 625, the court says:

"The following authorities support the contention that, where a constitutional provision fixes salaries of officers with a limitation, same neither be changed nor increased during the term to which such officer was appointed or elected, and a definite time being fixed by the Constitution or statute for the payment of such officer, such provisions proprio vigore constitute an appropriation out of the treasury for the payment thereof as the same becomes due. Thomas v. Owens, 4 Md. 189; State v. Hickman, 9 Mont. 370, 23 P. 740, 8 L. R. A. 403; State v. Kenney, 10 Mont. 485, 26 P. 197; State v. Weston, 4 Neb. 216; State v. Weston, 6 Neb. 16; State v. Burdick, 4 Wyo. 272, 33 P. 125, 24 L. R. A. 266; People v. Goodykoontz, 22 Colo. 507, 45 P. 414."

To these last citations may be added: Windes v. Frohmiller (Ariz.) 3 P. (2d) 275, and the cases cited therein at page 278; Gilbert v. Moody (Idaho) 25 P. 1092; Reed v. Houston, 24 Idaho, 26, 132 P. 109;

Ann. Cas. 1915A, 1237; State ex rel. Davis v. Eggers (Nev.) 91 P. 819, 16 L. R. A. (N. S.) 630; and the cases approved by this court in Riley v. Carter, supra, and Edwards v. Carter, supra.

After the quotation above set out from Menefee v. Askew, supra, the court said:

"And some authorities go to the extent that such is the effect when the office is created by statute, and the salary and time of payment also fixed thereby." (Citing authorities.)

—and then adds that:

"The foregoing rule is criticized and not followed in the cases of Myers v. English, 9 Cal. 341; Pickle v. Finley, Comptroller, 91 Tex. 484, 44 S. W. 480; Shattuck v. Kincaid, 31 Ore. 379, 49 P. 758; Kingsbury v. Anderson, 5 Idaho, 771, 51 P. 744."

It will be noted that this court does not say that the first rule announced, to wit, that where a constitutional provision fixes salaries of officers, with a limitation that same shall neither be increased nor changed during the term to which such officer was appointed or elected, and a definite time being fixed by the Constitution or statute for the payment of such officer, such provisions proprio vigore constitute an appropriation out of the treasury for the payment thereof as the same becomes due, is criticised by any authority; and it will be noted that as to the latter rule, when the office is created by statute and the salaries and time of payment also fixed, this court says that the rule is criticised and not followed in Shattuck v. Kincaid, supra, and Kingsbury v. Anderson, supra, and other cases cited in Menefee v. Askew. However, it will be noted that in Shattuck v. Kincaid the Supreme Court of Oregon held that an act of the latter class did not effectuate a continuing appropriation for the payment of the salaries, but did hold in the third and fourth syllabus paragraphs as follows:

"3. By the phrase, 'where provisions for the payment thereof shall have been made by law,' is meant such obligations as the state may have incurred under warrant of law previously enacted."

"4. Where the salary of a public officer is regulated by law, and made payable at fixed times, mandamus will issue to compel the Secretary of State to audit a claim for such services, and draw a warrant for its payment."

In the body of the opinion the court uses this language:

"Whatever may be the correct rule, where the salary is fixed by the Constitution, or where it is by that instrument rendered unchangeable during incumbency, followed by legislation simply fixing the amount and times of payment thereof, it is quite certain that, if regard be paid to the known and well-settled rules of statutory construction the Legislature has not, by the enactment of such a statute, without else, manifested an intention of setting aside funds in the treasury for its payment. Something more is needed, some setting aside of a particular fund, or designation of a fund, out of which it shall be paid, or direction to the officer in charge requiring him to make payment at particular times, or that it be paid out of the treasury."

In our opinion that "something more" is found in the act under consideration, governed by section 17 of the Schedule to the Constitution that such officers "shall receive such compensation for their services as may be provided by law," and the language employed in section 1, chapter 211, S. L. 1919, "That the following clerical, stenographic and other positions are hereby created, and the amounts set opposite each are hereby fixed as the annual salary for the same, which shall be paid out of funds appropriated therefor, monthly, upon warrants issued by the State Auditor," creates the office or position of the persons named therein, fixes their salaries and makes an appropriation by law to pay the same, and that section 1, chapter 211, S. L. 1919, creates only 34 district court reporter positions and fixes the salary of each such reporter, and that the position of one additional reporter was provided by chapter 44, S. L. 1927, p. 65, sec. 3, and that under section 2 of article 10 of the Constitution, it is the duty of the Legislature to provide by law for an annual tax sufficient with other revenues to defray the estimated ordinary expenses of the state for each fiscal year, and that whenever the expenses of any fiscal year shall exceed the income under section 3, the Legislature may provide for levying a tax for the ensuing fiscal year which with the other revenues shall be sufficient to pay the deficit of the state for the ensuing year, and that section 1, chapter 162, S. L. 1933, appropriating $1,500 per annum for each of 45 court reporters for the fiscal years ending June 30, 1934, and June 30, 1935, does not amend or repeal the law creating the office of district court reporter and fixing their salaries at $1,800 per year payable monthly. If, as claimed by petitioner and admitted by respondent, that appropriation was made in said act for 45 court reporters at $1,500 per annum each, it does not authorize this court to hold that there are 45 court reporters where we fail to find a law creating that number of positions. On the other hand, it does not justify us in refusing to compel the State Auditor to issue warrants for payment of salaries of the 35 district court reporters whose positions are created by law, and to compel the State Treasurer to pay their warrants or indorse thereon the proper notation for allowance of interest.

We are not passing upon the rights of the ten court reporters whose positions are not created by chapter 211, S. L. 1919, and chapter 44, S. L. 1927, p. 65, sec. 3, for the reason they are not similarly situated.

Relative to Kingsbury v. Anderson, supra, it certainly cannot, in the light of other authorities from that state, be held to criticise the rule that when the office is created by statute and the salary and time of payment also fixed thereby, and the act shows a clear legislative intent to appropriate a specific sum for a definite use or purpose, that such language does not amount to an appropriation, for in Gilbert v. Moody (Idaho) 25 P. 1092, the Supreme Court of that state in the first, second, third and fourth paragraphs of the syllabus held that:

"1. Stenographic reporters, appointed by district judges under an act of the fifteenth legislative assembly, are entitled to the compensation fixed by said act.

"2. Said act is not repugnant to the Constitution.

"3. Said act creates the office of court reporter and makes the appropriation for the payment of his salary.

"4. Mandamus will issue to compel the State Auditor to issue a warrant for the payment of the court reporter's salary as required by said act."

The Idaho act referred to in that case is found at page 25, S. L. Idaho, 1888-89, and insofar as necessary to a clear understanding of this case, provides:

"Section 1. That the judge of each district court in this territory shall have the authority, and he is hereby empowered, to appoint a competent stenographer, who shall be the official reporter of the several courts in his district, and whose duty it shall be to correctly report all proceedings had in said court, and the testimony taken in all cases tried before said court. * * *

"Sec. 2. That said reporter shall hold his office at the pleasure of the court by which he is appointed.

"Sec. 3. That said reporter shall receive

a yearly compensation for said services of $2,000, to be paid quarterly on the first days of January, April, July, and October, out of the general fund of the territorial treasury, and the comptroller is hereby authorized and empowered to draw his warrant thereon to make such payments when they shall be due, and the Territorial Treasurer is hereby authorized to pay the same out of any money in the territorial treasury not otherwise appropriated."

In the Kingsbury v. Anderson Case, supra, the section of the statute there considered provides that:

"The Comptroller or Attorney General may employ other counsel than the district attorney and the expenses must be paid out of the territorial treasury."

There no definite sum was fixed for the payment of attorney's fees and no time is stated when the fee shall be paid, and the act falls far short in language to that employed in the act we have under consideration.

For the reasons above stated, we are forced to the conclusion that the petitioner is clearly entitled to the relief prayed, and the writ of mandamus is granted.

CULLISON, V. C. J., and ANDREWS, McNEILL, OSBORN, BAYLESS, and BUSBY, JJ., concur. WELCH, J., concurs in conclusion. RILEY, C. J., concurs in part and dissents in part.

RILEY, C. J. (concurring in part and dissenting in part). I concur in the statement of law that only 35 court reporters' positions exist within this state, but I fail to find authority to hold that petitioner is of that number, especially in view of the fact that he pleads himself to be of a larger group (45) which does not exist by virtue of statute.

The writ of mandamus should be denied to this petitioner on the ground that he has no clear legal right. His title to the office of court reporter is clouded by the many and surplus claimants to such positions as exist.

Since petitioner is not entitled to prevail, the issue of law in which those alleged to be similarly situated are interested should be held in abeyance and not determined until it is properly presented.