**BATTLES v. CHILDERS, State Auditor, et al.**

No. 27334.   Oct. 6, 1936.

John Barry, for plaintiff.

Mac Q. Williamson, Atty. Gen., and Randell S. Cobb, Asst. Atty. Gen., for defendants.

WELCH, J. Plaintiff, legally appointed, qualified, and acting member of the Conservation Commission of the State of Oklahoma, seeks a writ of mandamus requiring the State Auditor and State Treasurer to allow and pay his claim as salary as such commissioner for the month of July, 1936.

There is no controversy as to any of the facts. It is conceded that the plaintiff is such member of said commission. That such commission was created by the 15th Legislature by House Bill No. 84, being article 3 of chapter 70, S. L. 1935; that by said act the salary was fixed at $4,000 per year, payable monthly; the term of office was fixed for a term of years, and the plaintiff is now serving one of those terms. The same Legislature passed a separate appropriation bill, appropriating funds specifically for salaries, traveling and other expenses of the members and employees of the Conservation Commission up to June 30, 1935, and from July 1, 1935, to June 30, 1936, but did not make any such appropriation for the fiscal year 1936-37, and for that reason the state officers declined to allow and pay plaintiff's claim pending determination of this action.

As we view the matter, this case is controlled by the former decisions of this court in Edwards v. Carter, 167 Okla. 287, 29 P. (2d) 610, and State ex rel. Telle v. Carter, 170 Okla. 50, 39 P. (2d) 134. It was there determined, in substance, that when the Legislature, by valid legislation, creates a state office and fixes the tenure of office and salary, then, under section 17 of the Schedule of the Constitution, it is the law that such officer shall receive the fixed compensation, and it was held that by such legislative enactment, together with the Constitution of the state, there resulted an appropriation by law of a sufficient portion of the state revenue to pay the state officer for his services at the rate fixed by law.

Those decisions being controlling, and upon the authority thereof, the prayer of the petitioner is granted, and the writ is ordered to issue.

RILEY, BAYLESS, BUSBY, and CORN, JJ., concur. McNEILL, C. J., OSBORN, W. C. J., and PHELPS and GIBSON, JJ., dissent.

McNEILL, C. J. (dissenting). In my opinion the cases of Riley v. Carter, 165 Okla. 262, 25 P. (2d) 666; Edwards v. Carter, 167 Okla. 287, 29 P. (2d) 610, and State ex rel. Telle v. Carter, 170 Okla. 50, 39 P. (2d) 134, are not analogous, applicable, or controlling, but are distinguishable from the case at bar.

It seems to me that the statute has been given a strained interpretation and that the court takes too broad a step in announcing a rule which in effect holds that there has been an appropriation for salaries in the case at bar when the act in question states that:

"All salaries and compensation for the services provided for in this section shall be payable monthly out of the money appropriated, or to be appropriated hereafter." Laws 1935, c. 70, art. 3, sec. 8.

There are now no available funds which have been appropriated by the Legislature for salaries and compensation for such services, nor are there any funds available within the meaning of the words "* * * to be appropriated hereafter."

It is my view that without such specific appropriation the salary of plaintiff cannot be paid out of the funds in the State Treasury. To hold otherwise constitutes judicial legislation.

For these reasons, I dissent.

GIBSON, J. (dissenting). I cannot agree with the majority opinion. The present commission, of which the plaintiff is a member, was created by House Bill No. 84, S. L. 1935, c. 70, art. 3. It fixed the term of the commissioners at four years and provided for an annual salary of $4,000 for each member. That portion of the bill fixing salaries reads as follows:

"Each of said commissioners shall be paid an annual salary of four thousand ($4,000) dollars per year, and all other assistants and employees shall be paid such salary and compensation as may be by the commission deemed just and equitable for the services rendered not to exceed thirty-six hundred ($3,600) dollars per year each, for technical help, and not to exceed eighteen hundred ($1,800) dollars per year each, for other help. All salaries and compensation for the services provided for in this section shall be payable monthly out of the money appropriated or to be appropriated hereafter. The members of the commission, or any employee or employees thereof, shall be allowed their actual and necessary expenses in the performing of official duty when absent from the State Capitol upon official duty, but no expense account of either the members of the commission nor (sic) any employee thereof, shall be paid until the same has been itemized, sworn to and approved by the commission, provided expenses shall be limited to four ($4) dollars per day exclusive of transportation." Sec. 8.

The act became effective March 22, 1935.

Thereafter, by House Bill No. 540, S. L. 1935, effective April 15th of that year, the Legislature made the following appropriation:

"There is hereby appropriated out of any moneys in the State Treasury not otherwise appropriated, the following sums or so much thereof as may be necessary for the purposes herein mentioned and no other.

"Salaries, traveling and other expenses of members and employees of the Conservation Commission of the State of Oklahoma, but in no event shall the hotel expenses exceed four ($4) dollars per day, per person, supplies, equipment and contingent expenses of office thereof, and other lawful expenditures authorized by law, to be performed by the State Conservation Commission for the period beginning on the effective date thereof and ending on June 30, 1935, fifty thousand ($50,000) dollars. For the fiscal year beginning July 1, 1935, and ending June 30, 1936, one hundred thousand ($100,000) dollars."

No appropriation was made for the fiscal year 1936-37. The State Auditor has refused to audit plaintiff's claim for July, 1936, salary and to issue warrant therefor for the reason that such act would be violative of section 3568, O. S. 1931, and section 55, art. 5, of the Constitution, prohibiting the issuance of any warrant in disbursement of state funds except in pursuance of an act of the Legislature definitely appropriating the fund for the purpose for which the warrant is issued.

Plaintiff takes the view that the act creating the commission (H. B. No. 84, S. L. 1935) and fixing salaries of the members thereof is in itself a sufficient appropriation measure to satisfy the aforesaid constitutional and statutory provisions. In this he relies upon the decisions in Riley v. Carter, 165 Okla. 262, 25 P. (2d) 666; Edwards v. Carter, 167 Okla. 287, 29 P. (2d) 610; State ex rel. Telle v. Carter, 170 Okla. 50, 39 P. (2d) 134.

In my opinion Riley v. Carter, supra, has no application to the question involved here. There the salary for a constitutional office was involved and it was held that the office was created and the salary therefor appropriated by the Constitution. The opinion differentiates between a constitutional office and one created by statute. Edwards v. Carter, supra, involved the salary of the Judge of the Criminal Court of Appeals. Provision for that office was made in the Constitution and the court was established by the Legislature. Article 2, chapter 14, S. L. 1909. In that act it was provided that "said Judges shall have the same qualifications and receive the same salaries as Justices of the Supreme Court. * * *" The conclusion reached in the Edwards Case was controlled by the decision in the Riley Case. In the Telle Case, section 3518, O. S. 1931, which provides: "That the following clerical, stenographic and other positions are hereby created, and the amounts set opposite each are hereby fixed as the annual salary for the same, which shall be paid out of funds appropriated therefor, monthly, upon warrants issued by the State Auditor," was under consideration. Here the material portion of the statute before us is as follows:

"Each of said commissioners shall be paid an annual salary of four thousand ($4,000) dollars per year. * * * All salaries * * * provided for in this section shall be payable monthly out of the money appropriated or to be appropriated hereafter." Laws 1935, ch. 70, art. 3, sec. 8.

In comparing the foregoing provisions, the difference in scope and legal effect as applied to the question of appropriation is obvious. In the Telle Case the court held that the language "the amounts set opposite each are hereby fixed as the annual salary for the same, which shall be paid out of funds appropriated therefor, monthly, upon warrants issued by the State Auditor, * * *" amounted to an appropriation by law. From the language of the opinion, it appears to me that the conclusion reached in that case was prompted by the view that it was the clear legislative intent to create an appropriation by the act that created the office. Here the salaries are to be paid monthly "out of the money appropriated or to be appropriated hereafter." It is evident that the Legislature intended that the payment of the salaries provided for in the act was dependent upon future appropriations by the Legislature. There is no reference to future appropriations in the act in the Telle Case. The reference is to funds "appropriated therefor," indicating with some degree of clearness that an appropriation was made by the terms of the act. Here the language employed is substantially different. Conceding the rule announced in the Telle Case to be correct, in my opinion it is neither applicable nor controlling here. To broaden our construction of such statutes and to go beyond the decision in the Telle Case, as does the majority opinion, is, in effect, to nullify the provisions of section 55, art. 5, of the Constitution and to overrule former decisions of this court. Menefee v. Askew, 25 Okla. 623, 107 P. 159; Meyer v. Clift, 31 Okla. 793, 123 P. 1042; Carter v. Rathburn, 85 Okla. 251, 209 P. 944. Without legislative intent to appropriate, there can be no appropriation.

Menefee v. Askew, supra. Here the act creating the office, by its positive terms, shows an intention not to make an appropriation, but to leave the appropriations to subsequent acts of the Legislature.

In my opinion, the warrant in question was not based upon an appropriation and is consequently illegal and void, and for that reason the writ should be denied.

PHELPS, J. (dissenting). I concur in the dissenting opinion prepared by Mr. Justice Gibson, and in addition thereto will state that, as I view it, the majority opinion is based neither upon sound logic, good reasoning, nor fundamental legal principles, and I, therefore, cannot concur therein.

As a basis for this dissenting opinion I call attention to section 55, art. 5, of the Constitution of Oklahoma, which provides that:

"No money shall ever be paid out of the treasury of this state, nor any of its funds, nor any of the funds under its management, except in pursuance of an appropriation by law. * * *"

In Webster's New International Dictionary, Second Edition, "Appropriation" is defined as "Money set apart by formal action to a specific use." Ballentine's Law Dictionary defines "Appropriation of Money" as "An authority of the Legislature, given at the proper time and in legal form to the proper officers, to apply a distinctly specified sum from a designated sum out of the treasury in a given year, for a specified object or demand against the state." In the light of this constitutional provision and these definitions of the word "appropriation" there can be no doubt as to what the makers of the Constitution intended when money was to be taken out of the public treasury.

The 1935 Session of the Legislature (chapter 70, Session Laws 1935) amended the drainage and conservation law and provided for three commissioners to be paid an annual salary each of $4,000 per year, and provided further that:

"* * * All salaries and compensation for the services provided for in this section shall be payable monthly out of the money appropriated or to be appropriated hereafter.***"

Likewise in the light of this provision of the statutes there can be no doubt about what the intention of the Legislature was when the expenses of the Conservation Commission were to be met, unless we read into the statutes **further** and **additional** provisions not even hinted at in the act itself.

The question before us here is not a new question to this court. Menefee, State Treas., v. Askew, 25 Okla. 623, 107 P. 159, was a case in which Askew, State Game Warden, brought suit in the superior court of Logan county against the State Treasurer, claiming his salary as such Game Warden, making a similar contention to the one made in the instant case. Judgment was in his favor, and upon appeal this court, in an opinion written by Justice Williams, formerly a member of the Constitutional Convention, reversed the judgment of the superior court, using the following language in the first paragraph of the syllabus:

"An 'appropriation' in this state is an authority of the Legislature, given at the proper time and in legal form to the proper officers, to apply a distinctly specified sum, from a designated fund out of the treasury in a given year, for a specified object or demand against the state."

The opinion cited with approval Meyers v. English, 9 Cal. 342, 349, which case holds:

"It is within the legitimate power of the judiciary, to declare the action of the Legislature unconstitutional, where that action exceeds the limits of the supreme law; but the courts have no means, and no power, to avoid the effects of nonaction. The Legislature being the creative element in the system, its action cannot be quickened by the other departments. Therefore, when the Legislature fails to make an appropriation, we cannot remedy that evil. It is a discretion specially confided by the Constitution to the body possessing the power of taxation. * * * We must trust to the good faith and integrity of all the departments. / Power must be placed somewhere, and confidence reposed in some one."

In this opinion Justice Williams also quotes with approval from the opinion of Chief Justice Gaines, of the Supreme Court of Texas, in Pickle v. Finley, 91 Tex. 484, 44 S. W. 480, in which Chief Justice Gaines used the following language:

"But we cannot agree that the mere fixing of the salary of an officer implies a purpose to appropriate ipso facto the money for its payment. Neither do we think that a provision in a general code, directing the periods at which the salaries of officers 'shall be payable', manifests any such intent. The evident purpose of such a provision is merely to fix the time when the salary may be paid, after the appropriation for its payment has been made."

In Meyer, State Auditor, v. Clift, 31 Okla. 793, 123 P. 1042, Clift, a district court reporter, brought suit in the district court of Oklahoma county, alleging that there was due him the sum of $400 as salary, and prayed—as in the instant case—for a writ

of mandamus against the State Auditor. The district court granted the writ. This court reversed the judgment of the district court in an opinion written by Justice Hayes, and concurred in by the other four members of the court, including Justices Williams and Kane, who were, as was the writer of the opinion, members of the Constitutional Convention; and by reason of that fact, it may be assumed they were better qualified to say what meaning the Constitution makers intended should be ascribed to the plain language of that document involving the appropriation of public funds. In the body of that opinion the following language is used:

"If an act creating an office and fixing the salary thereof constitutes an appropriation by law, what need is there for that portion of the constitutional provision which prohibits the making of any appropriation in a general appropriation bill for any officer whose employment has not been provided and the amount of salary fixed by law prior to the enactment of any such general appropriation bill? If an office has not been established and the salary fixed by an act of the Legislature before the passage of any general appropriation bill, no appropriation to pay the salaries of such office can be made by a general appropriation bill; but it is a fair implication from the provision, if such office is established and the salary fixed by the statute, then an appropriation for the salary may be made in a general appropriation bill. This provision would be meaningless, if the mere establishment of an office and fixing the salary constituted a continuing authority for the payment of the salary out of the treasury of the state; for, in that event, there would be no need of any appropriation for such salaries, either by general bill or a separate appropriation bill."

This question was again before the court in Carter, State Auditor, v. Rathburn, 85 Okla. 251, 209 P. 944. In that case the plaintiff, Rathburn, was a clerk in the State Examiner's office. An appropriation was made by the Legislature to pay her salary, but that particular item was disapproved by the Governor. She filed suit in the district court of Oklahoma county, praying for a writ of mandamus against the State Auditor, making the same contention that the plaintiff makes in the instant case. The district court granted the writ and this court reversed the decision of that court in an opinion written by Chief Justice Harrison, who himself had been a member of the Constitutional Convention. In that opinion this language is used:

"The clerkship in question was created by chapter 260, S. L. 1917, and is yet in full force and effect. Each successive Legislature since 1917 has made an appropriation for such clerkship, and such appropriations have heretofore not been disapproved, and the fact that the Governor has disapproved the item of appropriation made by the last Legislature does not repeal the clerkship, but leaves it in full force as created by the act of 1917. To illustrate what we mean, this clerkship is provided for by statute, and if it were filled by a clerk until the convening of the next Legislature, and the next Legislature should make appropriation to pay same, which it has authority to do, the only effect it would have would be to deprive such clerk of her pay until the Legislature met and made another appropriation for her salary. The clerkship is there, created by statute, and has not been abolished, but the Governor has disapproved the item of appropriation for same, and the Constitution makes no provision by which such item may become a law, except by a repassage, as provided in section 11, supra."

In this opinion also Chief Justice Harrison used the following language:

"The power to make appropriations for which the public must pay the taxes is one of the most sacred rights delegated to legislative bodies, and the law prescribes the exact manner in which such appropriations may be made, and the courts should **jealously guard against straining the provisions of law in order to make an appropriation valid.**"

The Legislature not only failed to make the appropriation for salaries of the Conservation Commission beyond June 30, 1936, but it also failed to make any other appropriation for the use of that commission, and it seems most absurd for the Legislature to have considered that the salaries of the commission were automatically appropriated and then failed to make appropriations for any additional expenses, and thus leave the commissioners occupying the positions and drawing salaries without an appropriation, to even buy a postage stamp, until the Legislature should convene six months hence. It seems more logical to assume that the Legislature had in mind that the people themselves, before the expiration of June 30, 1936, would give expression, at the polls, as to whether they desired to continue the Conservation Commission in force and whether they would appropriate funds for salaries and maintenance of the commission; and it appears in the record, as well as being a matter of common knowledge, that the people did so express themselves and rejected the proposed amendment to the law and the appropriation for the support of the commission by a vote of a majority of more than 65,000.

Therefore, in view of the fact that the Legislature, the peoples' representatives,

failed to make the appropriation, and the people themselves, by their votes, refused to make the appropriation, I am unwilling, in the absence of any law making it my mandatory duty to do so, to hold that they did so intend, and must decline to assume any part of that responsibility. The majority opinion is predicated upon the decisions of this court in Edwards v. Carter, 167 Okla. 287, 29 P. (2d) 610, and State ex rel. Telle v. Carter, 170 Okla. 50, 39 P. (2d) 134. As stated in Mr. Justice Gibson's dissenting opinion filed herein, it appears to me that these decisions may be distinguished from the case at bar, but if they cannot be so distinguished, then they are in conflict, as I view it, with former opinions of this court hereinabove cited. If they are in conflict with former decisions of this court, it may be said that they, being the latest expressions of this court, are binding upon us and it is our duty to follow them. I cannot do so, however, without voicing my opposition and registering my disapproval, and I therefore most respectfully dissent.