No. 13530

IN THE SUPREME COURT OF THE STATE OF MONTANA

1976

---

FIRST NATIONAL BANK IN BOZEMAN,
at BOZEMAN, MONTANA, a national
banking corporation,

Plaintiff and Respondent,

-vs-

SOURDOUGH LAND and CATTLE COMPANY, a
Montana corporation, MONTANA EDUCATIONAL
BROADCASTING COMMISSION, an agency for
the State of Montana, and THE STATE OF
MONTANA,

Defendants and Appellants.

---

Appeal from:  District Court of the Eighteenth Judicial District,
Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

For Appellants:

Morrow, Nash and Sedivy, Bozeman, Montana
Edmund Sedivy argued, Bozeman, Montana

For Respondent:

Hon. Robert L. Woodahl, Attorney General, Helena,
Montana
Walter S. Murfitt argued, Special Assistant Attorney
General, Helena, Montana
Berg, Angel, Andriolo & Morgan, Bozeman, Montana

---

Submitted:  October 28, 1976

Decided: DEC 3 0 1976

Filed: DEC 3 0 1976

Thomas J. Kearney
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This is an action in interpleader brought by the First National Bank in Bozeman (Bank) naming Sourdough Land and Cattle Company (Sourdough), the Montana Educational Broadcasting Commission and the State of Montana as defendants.

Sourdough sought to satisfy a judgment against the state of Montana by garnisheeing State funds held by the Bank. The judgment was in the amount of $220,000. It arose out of the refusal of a special session of the legislature to appropriate money to continue lease payments on a lease entered into by the Montana Educational Broadcasting Commission. The Commission was specifically directed by the legislature not to pay any future monies to Sourdough on the lease. Sourdough filed suit asking damages of $751,445.81 as the amount due for the breach of the ten year lease. As provided by section 83-606, R.C.M. 1947, negotiations toward settlement began. A stipulation by the board of examiners for the state of Montana, such board consisting of Thomas L. Judge, Governor, Frank Murray, Secretary of State, and Robert L. Woodahl, Attorney General, was entered into for the compromise and settlement of the contractual claim against the state in the amount of $220,000. Judgment was entered in that amount and presented to the special session of the Forty-fourth Legislative Assembly which was called by a proclamation of the governor and limited to:

1. Enactment of the six mill property tax levy authorized by section 84-3804, R.C.M. 1947.

2. Amendment of the general appropriation bills, House Bills 264, 269, 271, 289 and 712, to appropriate and authorize expenditure funds, the receipt of which was not anticipated when the legislature met in regular session. No action was taken by that body to satisfy the judgment.

Thereafter, Sourdough caused the sheriff of Gallatin County to execute upon the $220,000 on deposit with the First National Bank in Bozeman. The Bank furnished a certified check in that amount from an account of the state but brought this action seeking to have Sourdough and the state interplead

their claims and to have the court adjudicate the rights of the parties to the money.

The district court found (1) that the state was not a judgment creditor within the meaning of that term as used in Chapter 58, Title 93, R.C.M. 1947; (2) that there was one remedy for Sourdough pursuant to section 83-607, R.C.M. 1947; (3) that the special session was not the legislative assembly next succeeding the date of judgment; and (4) that the term referred to was the Forty-fifth Legislative Assembly meeting in 1977.

The issues presented for review are:

(1) Is the state of Montana a "judgment debtor" within the meaning of Chapter 58, Title 93, R.C.M. 1947, thus allowing Sourdough to levy upon the monies of the state on deposit with the Bank?

(2) Is section 83-607, R.C.M. 1947, the sole means of obtaining satisfaction of a judgment against the state?

(3) To what does the term "legislative assembly" refer and was the special session the "legislative assembly of the state of Montana next succeeding the date of judgment" within the meaning of section 83-607?

(4) If the state is not subject to execution and if the sole means of satisfying a judgment against the state is pursuant to section 83-607, and if the special session was the legislative assembly next succeeding the judgment, and since that body did not appropriate funds to pay the judgment, then what remedy does Sourdough have?

On the first issue, whether the state is a "judgment debtor" Sourdough makes several arguments. It argues there is nothing in Chapter 58, Title 93, R.C.M. 1947, which either excludes or includes the state. By analogy to the definition of debt in section 18-101, R.C.M. 1947, which is general and could be read to include the state as a debtor, Sourdough argues that therefore the state can be a debtor and thus a judgment debtor. Sourdough points to State of Montana, Dept. of Soc. & Rehab. Services v. Hultgren, ____Mont.____, 541 P.2d 1211, 32 St.Rep. 1091, wherein this Court found that

- 3 -

the general rule the state is not ordinarily considered within the pur-
view of a statute, however general, unless there is a clear manifest
intention to do so, has been relaxed in modern times.  This it claims is a
basis for including the state within the meaning of judgment creditor.
Sourdough also argues that section 93-5814, R.C.M. 1947, which exempts
certain property of the judgment creditor from execution, specifically
certain property of cities and counties, by implication includes the state
within the definition of judgment creditor or there would be no need to
exempt governmental property.  Article VIII, Section 14, 1972 Montana
Constitution provides:

> "Except for interest on the public debt, no money shall
> be paid out of the treasury unless upon an appropriation
> made by law and a warrant drawn by the proper officer in
> pursuance thereof."

It is argued that this Article does not apply, and if it did, it would
operate to harm other rights chiefly due process guarantees.

Sourdough is undoubtedly correct in observing that the language of
Chapter 58, Title 93, does not explicitly include or exclude the state as a
judgment debtor.  The analogy to section 18-101, R.C.M. 1947, definition of
debtor, fails because that section is specifically hedged by the phrase
" * * * within the meaning of this chapter * * *" indicating the intent
that the definition not be generalized in the manner Sourdough wishes.

State of Montana Dept. of Soc. & Rehab. Services v. Hultgren, ____
Mont.____, 541 P.2d 1211, 1213, 32 St.Rep. 1091, 1094, sets out the applicable
rules:

> "' * * * the rule to be observed in the construction of
> statutes is that the state is not included by general
> words therein creating a right and providing a remedy for
> its enforcement.'

> "' * * * the general rule has been relaxed in modern times.
> Accordingly, the state may have the benefit of general
> laws; and the general rule has been held not to apply to
> statutes by which the government or a part or agency
> thereof is given powers rather than deprived of them, or
> where no impairment of the sovereign powers will result
> * * *'" (Emphasis supplied.)

In Hultgren, the Court was dealing with the term "third person" in the context

of a statute empowering a third person, who in good faith supplies necessary articles to a child, to recover the reasonable value of such articles from the parent. It is clear that such construction would give the state power and would not impair the sovereign powers of the state.

The broad construction of judgment debtor does not result in the state gaining any beneficial powers and it does impair the sovereign power of the state. See Waterbury v. Board of Commissioners of Deer Lodge County, 10 Mont. 515, 26 P. 1002. In Waterbury the Court came to this same conclusion and quoted with approval the discussion in Merwin v. City of Chicago, 45 Ill. 133, 92 Am.Dec. 204. What was said in Waterbury about the seizure of revenues paralyzing government is even truer today than it was in 1891 because the financial structure of government is infinitely more complex. To allow the state's creditors to seize state funds where they find them would cause chaos and allow the creditors to weaken government. In Klein v. City of New Orleans, 99 U.S. 149, 25 L Ed 430, 431, the United States Supreme Court said:

> "Property and revenue necessary for the exercise of these powers become part of the machinery of government, and to permit a creditor to seize and sell them to collect his debt would be to permit him in some degree to destroy government itself."

We hold that the state as a "judgment debtor" and subject to execution would result in the impairment of its sovereign powers and would be contrary to public policy.

Sourdough next argues that because section 93-5814(10) specifically excludes certain county and city properties from execution, this implies that the state is a judgment creditor because there would be no need to exclude some types of governmental property unless other types of property were subject to execution. Section 93-5814(10) is not a model of draftmanship, it has been amended several times, and as it presently reads grants the exemptions only to married judgment creditors. It seems unlikely that there are many married judgment creditors who own county courthouses, jails or public offices. This section was probably originally enacted as a part of a list of those things exempt under the common law from execution.

Certainly to argue that such exemption of city and county property somehow makes state monies subject to seizure by a private creditor is to read too much into the statute. The state is not a judgment debtor and its funds are not subject to execution.

The sole means of collecting a judgment against the state in a contractual dispute is that provided in section 83-607, R.C.M. 1947, entitled "Judgments--payment." which reads:

> "A final judgment shall be the obligation of the state of Montana, and shall be paid out of funds appropriated by the legislative assembly of the state of Montana next succeeding the date of judgment."

This section conforms with the 1972 Montana Constitution, Article VIII, Section 14, which reads:

> "Prohibited payments. Except for interest on the public debt, no money shall be paid out of the treasury unless upon an appropriation made by law and a warrant drawn by the proper officer in pursuance thereof."

The Convention Notes indicate:

> "No change except in grammar [Art.XII, Sec. 10]".

Sourdough argues that a case interpreting the 1889 sections, State ex rel. Toomey v. State Board of Examiners, 74 Mont. 1, 238 P. 316, stands for the proposition that "appropriation made by law" does not require a specific appropriation bill. In _Toomey_ the legislature required by statute that an amount sufficient to meet the principal and interest on state treasury notes be set aside out of the general fund. _Toomey_ was discussed in State ex rel. Dean v. Brandjord, 108 Mont. 447, 454, 455, 92 P.2d 273:

> "The phrase contained in the constitutional provision, 'appropriations made by law' does not require the introduction of an appropriation bill, the requirement being met by an appropriation sanctioned by law. (State ex rel. Toomey v. State Board of Examiners, 74 Mont. 1, 238 P. 316.) The usual statement of the requirement is, 'that no specific language is necessary to make an appropriation, for the test is as to whether or not the people have expressed an intention that the money in question be paid.' [Citing cases.] Illustrative of this type of compliance with the constitutional requirement of 'appropriations by law' in this jurisdiction are the cases of State ex rel. Rotwitt v. Hickman, 9 Mont. 370, 23 P. 740, 8 L.R.A. 403; State ex rel. Buck v. Hickman, 10 Mont. 497, 26 P. 386; State ex rel. Wade v. Kenney, 10 Mont. 485, 26 P. 197. These cases dealt with salaries fixed

by law and which were ordered paid, or at least warrants
drawn therefor without express appropriations having
been made for their payment."

There has been no express intent that the money, in this case the judgment,
be paid that would substitute for an express appropriation by the legislative
assembly. While it is clear the statutory section imposes a duty upon the
legislature to pay the judgment, that is not enough. In <u>Brandjord</u>, the
Court said:

" * * * But the mere duty on the part of the legislature
to make an appropriation does not satisfy the requirement
of an 'appropriation by law' any more than does the promise
of the government to pay money or make an appropriation."

Sourdough argues it is denied the right to full redress if it cannot
execute against the state, but this is not the case. Here the state has
set up a procedure for satisfying judgments against it which protects the
interests of the state and prevents the disruption of the orderly processes
of government.

The reasons for the procedure set out in section 83-607, R.C.M.
1947, are the same ones which deny Sourdough the right to execute against
the state. The payment of the judgment here must be part of an orderly
budgetary process. The random seizure of state assets would likely result
in the disruption of orderly government. The presentation of the amount
due to judgment creditors at the beginning of the normal budgetary process
allows the legislative assembly to order its funding priorities, while the
seizure of funds from one agency or one department would allow chaos in
budgeting.

Sourdough contends it complied with the provisions of section
83-697, R.C.M. 1947, when it presented an appropriation bill to the special
session. The question raised by this contention is this: Was the special
session the "legislative assembly" next succeeding? The term legislative
assembly is used in Chapter 2, Title 43, R.C.M. 1947, which is entitled
"THE LEGISLATIVE ASSEMBLY--ITS COMPOSITION, ORGANIZATION, OFFICERS AND
EMPLOYEES." In section 43-201, it is stated:

"The legislative assembly consists of senators and representatives elected from the several senatorial and respresentative districts of the state in the number specified by law."

This provision speaks of the legislative assembly in terms of its members and not in terms of the time at which it meets. There is reference to "Each session of the legislative assembly" in section 43-205 and in section 43-207 there is reference to "the meeting of any regular session of the legislative assembly". It seems clear that when the legislature intended to speak of sessions of the unique group of senators and representatives that make up each legislative assembly that it chose to do so by using the word "session". The reference in section 83-607, R.C.M. 1947 to the "legislative assembly next succeeding the judgment" is a reference, in this case, to the Forty-fifth Legislative Assembly meeting in 1977. This is consistent with the logic behind the statute which is to incorporate the judgments into the orderly budgetary process. It is possible, as was the case here, that the next session of the legislative assembly would be a special session called for limited purposes and not one which was going to go back through the budget and reorder it. The next session would not always be a proper place to consider and incorporate judgments against the state into a careful budget.

Because we find Sourdough has not followed the proper procedure, there is no need to answer the last question raised by it. The judgment of the district court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

- 8 -